**EXHIBIT A**

Merry Gentleman, LLC
2404 S Wolcott, Suite 32-33
Chicago, Illinois 60608

As of February 1, 2007

<u>VIA ELECTRONIC MAIL</u>

George and Leona Productions, Inc.
c/o Ziffren, Brittenham, Branca, Fischer et al
1801 Century Park West
Los Angeles, CA 90067-6406
Attention: Matthew M. Johnson, Esq.

United Talent Agency
9560 Wilshire Blvd. 5th Floor
Beverly Hills, CA 90212
Attn: Ms. Shani Rosenzweig

    RE: "The Merry Gentleman" (the "Picture") George and Leona Productions, Inc. and Michael Keaton/ Acting Services

Dear Shani and Matt:

On behalf of Merry Gentleman, LLC ("Company"), I am writing to confirm the basic terms of the agreement between Company, a pending SAG signatory company, and your client, George and Leona Productions, Inc. ( Federal I.D. # 95-3399103) ("Lender") f/s/o Michael Keaton ("Artist") with respect to Artist portraying the role of "Frank" in the Picture.

1.    <u>Start Date</u>:    March 19, 2007 (i.e., within one week of such date), subject to extension for events of force majeure, location and/or cast availability, defaults or delays caused by Artist, not to exceed three (3) months in the aggregate.

2.    <u>Period of Services</u>:    One "free" week of non-exclusive (non-exclusive only to Artist's directing services rendered for the Picture) pre-production services (e.g., rehearsals, tests, wardrobe fittings, make-up etc.) immediately prior to the Start Date and continuing until completion of Artist's services as required in connection with principal photography of the Picture (as based on the final production schedule); and post-production (e.g., dubbing, looping additional shooting, reshoots, etc.) which shall include up to seven (7) "free" post-production days (non-consecutive), subject to Artist's professional availability.

3.    <u>Location</u>: Chicago

4.    <u>Fixed Compensation</u>: Provided that Lender and Artist are not in breach of this Agreement and their respective obligations hereunder, Lender shall be entitled to receive Seven

M. Johnson, Esq. and S. Rosenzweig
"The Merry Gentleman" f/s/o Michael Keaton/ Acting
As of February 1, 2007; Rev'd. 2.23.07; 3.5.07; 3.6.07; 6.26.07; 7.23.07; 9.24.07; 10.10.07 EXE
Page 2 of 11

Hundred Thousand Dollars ($700,000) (the "Fixed Compensation"). Lender shall become pay or play for its Fixed Compensation upon execution of this Agreement and the attached Certificate of Employment. The Fixed Compensation shall be subject to Company's right of suspension and termination by reason of death, disability, default or force majeure. The Fixed Compensation shall be paid in equal weekly installments over Artist's acting services during the scheduled period of principal photography. The Fixed Compensation shall be placed in escrow with United Talent Agency prior to Artist's commencement of services in connection with principal photography pursuant to a mutually approved escrow agreement executed by the parties. For services rendered by Artist at Company's request, in excess of the period of principal photography, the "free" pre-production and "free" post-production days, and for any other period(s) of service for which this Deal Memo specifies that no compensation is payable, Lender shall receive compensation at a daily rate of Thirty Thousand Dollars ($30,000) only in those circumstances where Artist, as the director of the Picture, has ordered additional shooting and the requirement for additional shooting is a result of circumstances beyond Artist's control (e.g., force majeure).

5. Contingent Compensation:

    a) Gross Receipts Participation: Provided that Lender and Artist are not in breach of this Agreement and their respective obligations hereunder, Lender shall be entitled to receive contingent compensation ("Contingent Compensation") as follows:

        i) At such time as Company has received Six Million Three Hundred Fifty Thousand Dollars ($6,350,000) of "Gross Receipts", Lender shall receive 50% of 100% of the next One Million Dollars ($1,000,000) of Gross Receipts received by Company.

        ii) Thereafter Lender shall receive 15% of 100% of Gross Receipts received by Company over Seven Million Three Hundred Fifty Thousand Dollars ($7,350,000).

    b) "Gross Receipts" Defined: Gross Receipts from the Picture with respect to any accounting period shall mean 100% of all non-returnable cash revenues, funds and receipts received by or credited to Company or its affiliates during such period (excluding therefrom capital contributions, loans and the like) ("Gross Receipts") in United States Dollars from the worldwide sales, license, exhibition or any other disposition of rights in the Picture or other exploitation (excluding blocked or restricted funds), and all ancillary rights thereto (e.g., merchandising, publishing, internet, soundtrack album, home video devices in any format), in any and all media from all sources throughout the universe in perpetuity. For the avoidance of doubt, home video revenue shall be included in Gross Receipts on a 100% royalty basis (i.e., not a customary 20% royalty basis).

M. Johnson, Esq. and S. Rosenzweig
"The Merry Gentleman" f/s/o Michael Keaton/ Acting
As of February 1, 2007; Rev'd. 2.23.07; 3.5.07; 3.6.07; 6.26.07; 7.23.07; 9.24.07; 10.10.07 EXE
Page 3 of 11

    c)     <u>Accounting Statements</u>: Company will render periodic accounting statements to Lender showing the appropriate calculations pursuant to this Agreement within ninety (90) days after the end of each accounting period as follows: i) accounting statements shall commence not later than six (6) months following the initial release of the Picture in any format; ii) thereafter, for the next two (2) years, Company shall issue accounting statements quarterly; iii) thereafter, for the next two (2) years, Company shall issue accounting statements semi-annually; and iv) thereafter, annually If there are no payments to be made in a particular accounting period, Company shall be under no obligation to render a statement for such period. Each statement shall be deemed binding and not subject to objection for any reason, and shall constitute an account stated, unless a written objection to the statement has been received by Company within twenty-four (24) months after mailing of such statement.

    d)     <u>Audit Rights</u>: Lender may, at its own expense, but not more than once annually, audit the applicable records at the Company's office in the United States in order to verify the accounting statements rendered hereunder. Any such audit shall be conducted only by a public accountant (subject to Company's reasonable approval) during reasonable business hours and in such a manner as not to interfere with Company's normal business activities and shall not continue for more than thirty (30) consecutive days, provided Company provides in timely fashion all documents reasonably requested by the auditor. Lender shall be forever barred from maintaining or instituting any action or proceeding based upon any matters or items which are embraced by or contained in any such statement unless written objection thereto shall have been delivered by Lender to Company within twenty-four (24) months after the mailing of such statement and unless such action or proceeding is commenced within six (6) months after delivery of such written objection.

    e)     <u>Payments</u>: Payments owing to Lender hereunder shall be sent to United Talent Agency, 9560 Wilshire Blvd., 5th Floor, Beverly Hills, CA 90212 Attention: Ms. Shani Rosenzweig, with a copy to Ziffren, Brittenham, Branca, Fischer et al, 1801 Century Park West Los Angeles, CA 90067-6406, Attention: Matthew M. Johnson, Esq.

    f)     <u>Collection Account</u>: Company agrees to set up a collection account ("Collection Account") with Jackson Boulevard Capital Management ("Jackson") to collect amounts payable from the domestic and foreign exploitation of the Picture, which such Collection Account shall be governed by a collection agreement ("Collection Agreement"), which such terms shall be approved by Lender (such approval not to be unreasonably withheld). Pursuant to the terms of the Collection Agreement between Company and Jackson Jackson shall collect receivables from third parties in connection with the exploitation of the Picture, and when there are any disbursements to be made from the Collection Account, all disbursement checks and wire transfers to third parties who are entitled must be co-signed by both Jackson and Artist's manager, Bill Tanner, c/o Tanner Mainstain Blatt & Glynn, 10866 Wilshire Boulevard, 10th Floor, Los Angeles, CA 90024, telephone number:310-446-2700; e-mail address:

M. Johnson, Esq. and S. Rosenzweig
"The Merry Gentleman" f/s/o Michael Keaton/ Acting
As of February 1, 2007; Rev'd. 2.23.07; 3.5.07; 3.6.07; 6.26.07; 7.23.07; 9.24.07; 10.10.07 EXE
Page 4 of 11

btanner@tmbgcpa.com (or other Lender/Artist replacement representative designated by Lender/Artist in writing.) The Collection Agreement shall also provide that it cannot be amended or terminated without the written consent of Company and Lender, and shall also require Jackson to undertake the following on behalf of Lender: i) pay the contingent compensation payable to Lender when due directly to Lender; ii) provide accounting statements to Lender on the same basis as Company; and iii) permit Lender to audit the Collection Account. Company hereby warrants and represents that all sums payable from distribution, sale and/or license agreements or any other disposition of the Picture entered into by Company in connection with the Picture shall be paid directly to the Collection Account.

      g) <u>Crediting of Overscale</u>: There shall no crediting of overscale or residuals for any purpose, including without limitation, against Contingent Compensation, and vice versa.

6.   <u>Credit</u>:     Subject to distributors' standard exclusions and exceptions, and provided Artist appears recognizably in the Picture, Artist shall receive credit in first position among cast members, on screen, on a separate card, above the title (subject to distributor's approval), in the main titles (or in the end titles if all credits appear in the end titles) and in paid ads. Artist's credit on screen and in paid ads shall be in a "size" of type (e.g. height, width, thickness, duration on screen) no smaller than the size of type used to accord credit to any other cast member, which at a minimum shall be 75% of the size of the title. In paid ads, Artist's credit should also appear before the title (subject to distributor's approval) in a size of type equal to 100% of the size of the regular title, 25% of the size of the artwork title and 100% of the size of type used to accord credit to any other cast member rendering services in connection with the Picture. Artist's credit should also appear above the artwork title in the parameters set forth herein if anyone else's name appears above the artwork title. Artist shall also receive such paid ad credit in any excluded ad in which any other cast member receives credit except so-called "award", "nomination" or "congratulatory" advertisements, in which only the honoree is mentioned in accordance with the requirements set forth in this Paragraph 6. If the name of any other individual is mentioned in radio advertisements and/or the audio portions of television advertisements and trailers for the Picture or internet advertising, then Artist's name shall also be mentioned in first position among cast members in such radio advertisements and/or audio portions of television ads and trailers or internet advertising.

7.   <u>Likeness in Paid Advertisements</u>:     If anyone else's likeness appears in a paid advertisement or in an excluded ad, Artist's approved likeness shall also appear in paid ads and/or excluded ads in substantially the equivalent size (taking into account relative body parts of all other cast members appearing therein); provided, however, (without frustrating the purpose of the foregoing), that in depicting the likeness of Artist and such other cast member, Company may take into account the relative physical characteristics of Artist and such other cast member and the appropriate proportion and perspective of the ad.

M. Johnson, Esq. and S. Rosenzweig
"The Merry Gentleman" f/s/o Michael Keaton/ Acting
As of February 1, 2007; Rev'd. 2.23.07; 3.5.07; 3.6.07; 6.26.07; 7.23.07; 9.24.07; 10.10.07 EXE
Page 5 of 11

8. <u>Approvals</u>:

    a) If the Picture is produced, and provided that Artist is not in default and performs his material obligations hereunder, Artist shall have mutual approval, such approval not to be unreasonably withheld or delayed, with respect to any changes in the screenplay that materially changes the essential characteristics of Artist's role and/or the storyline (the screenplay dated January 1, 2007is deemed approved.) Artist shall have approval rights of his co-star in the role of "Missy" (or approve her replacement) (Kelly Macdonald is hereby approved.) To the extent Company is granted consultation rights with respect to distribution, marketing and/or publicity for the Picture by the domestic distributor, Artist shall have consultation rights on the marketing, advertising and release campaign for the Picture including, without limitation, trailers, one-sheets, music videos and electronic press kits.

    b) Artist shall be given a right of approval, not to be unreasonably withheld, regarding the following production personnel (or their replacements): person(s) to serve as Artist's non-exclusive (but first priority) make-up artist and non-exclusive but first priority hairstylist, provided that it is understood and agreed that because of budgetary parameters such personnel must be local hires. In addition, Artist shall be given a right of consultation regarding his wardrobe person, stunt double and stand-in; provided that Company shall not be required to engage any persons with whom Company has, in its sole discretion, had a negative work experience, and, provided further that all such persons are available to render services at the times required; Company's union (or non-union) requirements; EEOC requirements; Company's ability to hire such person(s) at Company's applicable going rate and within the Picture budget; such persons being willing to execute an agreement which would be in compliance with Company's business practices and policies including, without limitation, with respect to screen and paid advertising credit; and such person(s) agreeing to be available to render services for other cast members at no additional cost, provided that Artist's make-up artist and hairstylist shall render first-priority services to Artist.

    c) Artist shall have the right to submit an approved biography of the Artist to Company for use hereunder. If Artist fails to submit such biography to Company within one (1) week following Company's request therefor, Company shall have the right to supply such biographical material and submit it to Artist for approval. If Artist does not approve such biography, the Artist shall advise Company of Artist's disapproval and the specific changes requested thereto within five (5) business days of Artist's receipt. Once Company has made the changes requested by Artist to such biography, such biography shall be deemed approved. If Artist has not specifically disapproved such biographical material submitted to Artist and given the reason for such disapproval within said five (5) business day period, Artist shall have been deemed to have approved same.

    d) Artist shall approve not less than fifty percent (50%) of the stills in which Artist appears alone or with other cast members. Stills shall be submitted in reasonable quantities. If

M. Johnson, Esq. and S. Rosenzweig
"The Merry Gentleman" f/s/o Michael Keaton/ Acting
As of February 1, 2007; Rev'd. 2.23.07; 3.5.07; 3.6.07; 6.26.07; 7.23.07; 9.24.07; 10.10.07 EXE
Page 6 of 11

Artist fails to approve at least fifty percent (50%) of such stills within five (5) business days (which such five (5) business day period shall be reduced to two (2) business days if Company has provided Artist or Artist's agent with written notice that it requires Artist's response sooner due to promotional exigencies) of Artist's or Artist's agent's receipt of such stills, then Company may designate and use any such submitted stills in addition to those (if any) approved by Artist in order to meet such fifty percent (50%) requirement. This shall also relate to stills which are frames from the Picture to be used in press kits or one-sheets.

  e) Artist shall have non-photographic likeness approval with three (3) passes. Same approval periods as set forth in Paragraph 8 (d) above.

  f) Company shall notify Artist prior to the occurrence of any so-called "behind-the-scenes" or "making of" photography, the shooting of which must not be disruptive to Artist.

  g) Neither clips from the Picture nor outtakes, behind-the-scenes footage, or so-called "bloopers" may be used for any reason without Artist's prior written consent; provided that Artist agrees to approve a sufficient amount of such film footage of Artist for use in promotional films, trailers and other promotional works (whether or not such footage is contained in the Picture) (excluding bloopers) which embodies Artist's appearance in order to complete the production, and so that a reasonable audience would conclude that Artist is one of the stars of the Picture.

  h) <u>Resubmissions</u>: If Company desires to use any of the approved stills or approved non-photographic likeness in the key art for the Picture (i.e., artwork used in one-sheets and posters) or on the home video packaging of the Picture (if different from the theatrical key art), or on the cover of a magazine, Company shall resubmit the approved still photographs and/or approved likeness, as applicable (*i.e.*, no rejected stills or likenesses will be resubmitted) which Company proposes to use and Artist shall approve at least 50% of those resubmitted. With respect to the approval of Artist's likeness, the provisions of Paragraph 8(e) shall control.

9. <u>Travel; Accommodations and Expenses</u>. Company shall furnish Artist with one first-class round-trip airfare between Artist's residence and Chicago (if available and if used). During the period of Artist's exclusive services, Company shall provide Artist with an accommodations allowance of One Hundred and Twenty-Nine Dollars ($129.00) per day which he may use against the total cost of his accommodations at The Peninsula Hotel in Chicago. Any charges in excess of such rate shall be Lender/Artist's sole responsibility and Company shall have no obligation to pay such excess charges. In addition, Company shall provide Artist with an allowance of Sixty Dollars ($60) per day and no individual shall receive a more favorable per diem

10. <u>Ground Transportation/ Rental Car</u>. When in Chicago, Company shall provide Artist with a full size rental car (to be approved by Artist; Artist has pre-approved a Chevrolet HHR),

M. Johnson, Esq. and S. Rosenzweig
"The Merry Gentleman" f/s/o Michael Keaton/ Acting
As of February 1, 2007; Rev'd. 2.23.07; 3.5.07; 3.6.07; 6.26.07; 7.23.07; 9.24.07; 10.10.07 EXE
Page 7 of 11

with customary insurance in connection with use of such vehicle and a driver (but Artist shall only have a driver during principal photography) and shall provide Artist with his exclusive transportation needs from airports, if applicable, to Artist's hotel accommodations and residence.

11. <u>Assistant</u>: During pre-production and principal photography Company shall hire Artist's assistant, Natalie Ebeid, at a weekly rate of Six Hundred Dollars ($600), to be paid only for those weeks that Artist's assistant is in Chicago performing services for Artist. Artist's assistant should also receive standard crew per diem and accommodations, as well as one (1) coach-class round-trip airfare to and from each location. Artist's assistant shall also be credited for her services as Artist's assistant on screen, in the end crawl of the Picture.

12. <u>Dressing Room</u>: During the period of principal photography Artist shall be provided with a dressing room in one-half of a two-banger. No other individual shall have a more favorable dressing room in connection with the Picture.

13. <u>Work Hours Provision</u>. Company agrees that Artist shall have at least a twelve (12) hour "turnaround" each day, measured from portal to portal; provided, however, if the Picture is behind schedule for that particular day and/or in general (e.g., if Artist does not work longer than Artist's working schedule and it will not be possible to shorten the number of pages or particular scenes scheduled to be shot), Artist shall consider in good faith amending Artist's work schedule.

14. <u>Wardrobe</u>: Subject to: (i) Artist's services not being terminated for an uncured material breach; (ii) Company's receipt of the answer print of the Picture; and (iii) Company's absolute right to retain any specific items of wardrobe for publicity or promotional purposes, Artist shall have the right to take one (1) change of any items of Artist's wardrobe (not including jewelry) which were purchased or made for Artist in connection with the Picture. Company shall furnish Artist with an IRS 1099 form covering an amount equal to fifty percent (50%) of Company's cost for any such item taken by Artist.

15. <u>Nudity</u>: There shall be no nude scenes or sex scenes or simulated sex scenes without his prior approval.

16. <u>Merchandising and Commercial Tie-Ups</u>: Artist's name, voice and/or likeness shall not be used in connection with merchandising or commercial tie-ups in connection with the Picture without Artist's prior written approval, which such approval shall not be unreasonably withheld or exercised in a manner that frustrates Company's merchandising campaign or other exploitation and/or promotion of the Picture, and which shall be deemed given if not objected to within five (5) business days after Artist's receipt of the particular item; provided, however, that the use of Artist's name in the credits on screen and in the full billing block only and in the credit listings and/or Artist's name and/or approved stills in connection with the advertising and promotion of the Picture shall not be deemed to be merchandising. (Artist's right of prior approval shall not be applicable to the merchandising of T-shirts, sweatshirts or posters which

M. Johnson, Esq. and S. Rosenzweig
"The Merry Gentleman" f/s/o Michael Keaton/ Acting
As of February 1, 2007; Rev'd. 2.23.07; 3.5.07; 3.6.07; 6.26.07; 7.23.07; 9.24.07; 10.10.07 EXE
Page 8 of 11

embody Artist's name or likeness, provided that only key artwork is used and, provided further, that no such items of merchandise which are pre-approved hereunder will display Artist's name alone (i.e., with no other words, likenesses, designs or pictures). In the event that Artist approves an item of merchandising or a commercial tie-up the parties shall negotiate in good faith the applicable royalty.

17. <u>Promotional Services</u>: Subject to Artist's approval, Artist shall render a reasonable amount of publicity services (at no additional charge) as reasonably requested by Company (or the distributor of the Picture) in connection with the initial theatrical release of the Picture, subject to the following: (i) Artist's professional availability; provided, however, that Artist shall utilize reasonable good faith efforts to meet the schedules proposed by Company which shall be reasonable or to propose reasonable alternative schedules, and (ii) Artist shall have the right to refuse specific publicity requests; provided, however, that Artist shall not exercise such right in a manner designed to frustrate or delay the timely promotion of the Picture, and further provided that Artist agrees to render publicity services in connection with a reasonable number of promotional/publicity activities as requested by Company in connection with the Picture. If Artist is asked to render services at a distant location (i.e., that is more than fifty (50) miles from Artist's residence), then Artist shall receive first-class air travel (if available, and if such promotional services are required at a distant location), first-class accommodations and a reasonable non-accountable expense allowance to cover meals, exclusive ground transportation and incidentals, all on a favored nations basis with all other individuals providing promotional services in connection with the Picture.

18. <u>Insurance:</u> Lender and Artist shall be covered by the errors and omissions, general liability and worker's compensation insurance policies for the Picture to the extent that Company obtains and maintains such policies and endorsements thereof. The provisions of this Paragraph 18 shall survive the termination of this Agreement.

19. <u>DVD/ Soundtrack Album</u>: If Artist is entitled to credit in connection with the Picture, and further subject to Lender and Artist's execution of Company's standard use and restriction letter, Company shall provide Artist, for personal use only, one (1) DVD and one soundtrack album based on the Picture, if any when such devices become generally commercially available, if ever.

20. <u>Premieres:</u> Provided Lender and Artist are not in material default hereunder, and Artist completes all material services required hereunder, then Artist and his guest shall be invited to attend the initial U.S. celebrity premiere of the Picture, if any, and certain major film festivals (i.e., Sundance, Cannes, Toronto and Berlin, if applicable). If Artist and his guest are not then already at such location, and if such premiere and/or major film festival is more than fifty (50) miles from his residence and Artist is not already at such distant location, and if any other individual, is accorded travel and expenses in connection with such invitation, then Artist and his non-business companion shall be entitled to round trip first-class air transportation from Artist's then-current principal residence to said premiere and/or major film festival, as applicable,

M. Johnson, Esq. and S. Rosenzweig
"The Merry Gentleman" f/s/o Michael Keaton/ Acting
As of February 1, 2007; Rev'd. 2.23.07; 3.5.07; 3.6.07; 6.26.07; 7.23.07; 9.24.07; 10.10.07 EXE
Page 9 of 11

and first-class hotel accommodations and a non-accountable expense allowance, to be negotiated in good faith, but in each instance no less favorable than that given to any other individual. It is hereby understood and agreed that if no other individual receives transportation, accommodations and a non-accountable expense allowance for the U.S. celebrity premiere and/or major film festival by the distributor of the Picture, then Company shall have no obligation to provide the foregoing to Artist to such premiere and/or major film festival; provided, however, Company agrees to use good faith reasonable efforts to cause the distributor of the Picture to provide Artist and his guest with round-trip air transportation, exclusive ground transportation, first-class accommodations and a reasonable per diem in connection therewith.

21. Indemnity: Except with respect to i) matters constituting a uncured material breach by Lender and/or Artist of any of the representations, warranties and/or agreements contained herein (or in the attached Standard Terms and Conditions); or ii) gross negligence, or willful misconduct or recklessness by Lender and/or Artist; or iii) a third party claim relating to, referring to, or arising out of the actions by Artist that are outside the scope of Artist's services in connection with the Picture, Company agrees to indemnify Lender and Artist and their heirs, successors and assigns ("Artist's Indemnitees") and hold Artist's Indemnitees harmless from and against any and all damages and expenses (other than with respect to any settlement entered into without Company's written consent or claim to which Company has not been notified) arising out of the production, distribution and/or exploitation of the Picture or any element thereof and shall provide Artist's Indemnitees with a defense (with counsel of Company's choice), provided Lender and Artist cooperate with Company and follows Company's reasonable instructions in connection with such claim. The provisions of this Paragraph 21 shall survive the termination of this Agreement.

22. SAG: The terms of this Agreement are subject to the terms of the Screen Actors Guild Basic Agreement (the "SAG Agreement"). Company is a SAG signatory and shall pay directly all pension, health and welfare payments in connection with Lender and Artist's services hereunder as required under the SAG Agreement. Except as expressly provided to the contrary herein, Company shall be entitled to the maximum right permitted under the SAG Agreement.

23. Assignment: Company shall have the right to freely assign or transfer this agreement and/or any of Company's rights hereunder to any person, firm or corporation, provided that such entity is major motion picture studio, television network or similarly financially responsible third party which assumes Company's obligations in writing. Upon such assignment, Company shall be relieved of its obligations hereunder. Lender may not assign this agreement under any circumstances; provided, however, Lender may assign its rights to receive its Contingent Compensation at any time after all services required of Artist hereunder have been completed, provided both a Notice of Irrevocable Assignment and Distributor's Acceptance in Producer's usual form shall be executed by Lender and by the assignee and delivered to Producer. Any such assignment shall be subject to applicable laws and to all rights of Producer hereunder.

M. Johnson, Esq. and S. Rosenzweig
"The Merry Gentleman" f/s/o Michael Keaton/ Acting
As of February 1, 2007; Rev'd. 2.23.07; 3.5.07; 3.6.07; 6.26.07; 7.23.07; 9.24.07; 10.10.07 EXE
Page 10 of 11

24. <u>Reuse of Photography</u>: Reuse of any part of the photography in which Artist appears recognizably shall require Artist's prior written approval, not to be unreasonably withheld; provided, however, than no such approval shall be needed with respect to: i) use in connection with the exhibition, advertising and/or promotion of the Picture; ii) use in connection with music videos of any song from the Picture; and iii) clips not exceeding three (3) minutes in length from the Picture to establish the story of a sequel to the Picture so long as the use of the clips does not suggest that Artist is rendering services in such sequel and Artist's name and likeness is not used in the credits or advertising for such sequel. In addition, Artist's prior approval shall be required for the reuse of any part of the photography from the Picture in which Artist appears recognizably in clips and trailers to be shown at theme parks and/or studio tour attractions as promotion for the Picture.

The provisions set forth above, together with the usual and customary provisions regarding Artist's insurability at customary rates and deductibles; results and proceeds; representations and warranties; a waiver by Artist of any right to seek or obtain injunctive relief; suspension and termination; force majeure; and other terms and conditions customarily contained in Company's agreements of this nature, shall be subject to good faith negotiations, taking into account the Picture's budgetary parameters and Artist's precedents if and when Artist has rendered services on low-budget motion pictures. Unless and until such time as such long-form agreement is entered into and executed by the parties, this letter agreement shall be fully binding.

Please indicate your acceptance of the above terms by signing in the space provided below.

Very truly yours,

Merry Gentleman, LLC

By: _[signature: Paul J Duggan]_

Its: _Member Manager_

Accepted and Agreed:

George and Leona Productions, Inc.

By: _[signature]_

Its: _____

M. Johnson, Esq. and S. Rosenzweig
"The Merry Gentleman" f/s/o Michael Keaton/ Acting
As of February 1, 2007; Rev'd. 2.23.07; 3.5.07; 3.6.07; 6.26.07; 7.23.07; 9.24.07; 10.10.07 EXE
Page 11 of 11

## CONSENT OF MICHAEL KEATON

I have read and am familiar with all the terms of the foregoing agreement between George and Leona Productions, Inc. ("Lender") and Merry Gentleman, LLC ("Company"), and, in order to induce Company to enter into said agreement, I consent to the execution thereof, ratify and confirm in my individual capacity all representation, warranties and agreements of Lender contained therein, agree to be bound by the terms and conditions thereof and agree that I shall render all services and grant all rights as are necessary to enable Lender to comply with its obligations under said agreement. I agree to look solely to Lender for full payment of any amounts due for all rights granted and services performed thereunder. In the event of any breach or default by Lender, I agree that without prior notice to me or Lender, Company may proceed against me as if I were a party thereto and I shall be primarily, jointly and severally liable with Lender thereunder.

By_____
Michael Keaton

Social Security No.:_____

**ACTING STANDARD TERMS AND CONDITIONS**

Reference is made to the deal memo ("Deal Memo") dated as of February 1, 2007, between George and Leona Productions, Inc. f/s/o Michael Keaton (collectively, "you") and Merry Gentleman, LLC ("Company"). These Standard Terms and Conditions are hereby deemed incorporated into the Deal Memo, and the Deal Memo and these Standard Terms and Conditions shall be collectively referred to herein as the "Agreement." As used in these Standard Terms and Conditions, all terms, except as otherwise indicated, shall have the same meaning as set forth in the Deal Memo.

1. Rights.

    1.1. The results and proceeds of your services hereunder in connection with the Picture shall be deemed a "work-made-for-hire" specially ordered or commissioned by Company in connection with the production of a motion picture with an assignment (exclusively, in perpetuity, throughout the universe, in all media, whether now or hereafter known or devised) to Company, if (despite the parties' intention) such results and proceeds are not considered works-made-for-hire. Company shall be the sole and exclusive owner of the Picture hereunder in perpetuity, throughout the universe, in all media now or hereafter known or devised. You acknowledge that the compensation set forth in this Agreement includes fair, equitable and adequate consideration in respect of all moral, economic and other rights, now or hereafter existing or granted by domestic or international legislation, including EC or other legislation or directives concerning remuneration pursuant to any blank audio/visual tape levy, rental, lending and/or other rights, all of which rights are owned by or assigned to Company pursuant hereto.

    1.2. Subject to the terms of the Deal Memo, You hereby grant to Company forever and throughout the world the exclusive right to use your name, voice, approved likeness and approved biography in connection with the Picture, and/or advertising, marketing, promotion and publicity in connection therewith, and/or any other exercise of Company's rights hereunder.

2. Representations and Warranties. You represent and warrant that: (a) you have and will continue to have the right to enter into and to perform this Agreement, to perform all of your obligations to be performed hereunder and to grant all rights granted hereunder, (b) all material written, composed, prepared, submitted or interpolated by you in connection with the preparation or production of the Picture (the "material") shall be wholly original with you and shall not be copied in whole or in part from any other work, except that submitted to you by Company as a basis for such material or in the public domain, and (c) to the best of your knowledge in the exercise of reasonable prudence, none of the material will violate or infringe upon the rights of privacy or publicity or constitute a libel or slander against any person, and that to the best of your knowledge in the exercise of reasonable prudence, said material and/or the production or other exploitation of any motion picture or other production based thereon will not violate or infringe upon the copyright, literary, dramatic, photoplay and/or other rights of any person. The term "person" as used herein shall mean any person, firm, corporation or other entity.

3. Indemnities. You hereby agree that you will indemnify, defend and hold Company and any person or entity claiming under or through Company harmless against all claims, losses, damages, liabilities, costs and expenses (including without limitation reasonable attorneys' fees and expenses) arising out of or resulting from any breach by you of this Agreement, including without limitation any breach of any of your warranties, representations or covenants hereunder. Company hereby agrees that it will defend and indemnify you with respect to all claims arising in connection with the production, distribution and other exploitation of the Picture, provided that such claims do not arise from your breach of this Agreement.

4. Suspension/Termination/Force Majeure. Notwithstanding anything to the contrary contained elsewhere herein, your employment and compensation hereunder shall automatically be suspended during any and all periods: (i) that you do not render services hereunder because of illness, incapacity or default; (ii) that production of the Picture is prevented or interrupted because of force majeure events, including without limitation any labor dispute, riot, strike, fire, war or governmental action, or any other disruptive event beyond Company's control; or (iii) that production of the Picture is prevented, interrupted or delayed by reason of the death, illness or incapacity of any key production personnel or a principal member of the cast. Unless this Agreement is terminated pursuant to this paragraph 4, the time periods for your services set forth in the Deal Memo shall be deemed extended by a period equivalent to all such periods of suspension. If any matter referred to in subdivisions (i) or (iii) above, other than default, continues for longer than five (5) consecutive days (to be reduced to two (2) days during principal photography) or ten (10)

Standard Terms Acting –M. Keaton 2.23.07; Rev;d. 3.5.07; 10.10.07 EXE

days in the aggregate (to be reduced to three (3) days during principal photography), or if any matter referred to in subdivision (ii) above continues for more than four (4) consecutive weeks or six (6) weeks in the aggregate, or in the event of any default by you, Company may terminate this Agreement. If you do not receive compensation hereunder for any period equal to or greater than six (6) consecutive weeks or eight (8) weeks in the aggregate pursuant to subdivision (ii) above, you may terminate this Agreement by written notice to Company and Company agrees to pay all accrued but unpaid payments to you as of the date of termination. Company may void any such notice of termination given by resuming payments hereunder to you within one (1) week of such notice, provided that such action shall not limit Company's rights if another event of force majeure gives rise to suspension pursuant to this paragraph 4. During any suspension due to an event of force majeure, if you are not in Default, you may not furnish your services to any other person or entity; provided, that Company shall have the right to recall you to render services hereunder on forty-eight (48) hours oral or written notice, and you shall report to Company to render services at the expiration of said one (1) day. You will not be suspended and/or terminated during an event of force majeure unless all individuals are likewise suspended and/or terminated; if any individual is reinstated or paid, then so will you be reinstated or paid, as the case may be. Company may not suspend you twice for the same force majeure event. The provisions set forth on this Paragraph 4 regarding suspension, termination and force majeure shall be no less favorable than the provisions accorded to any individual in connection with the Picture.

5. Remedy for Breach by Company. You recognize that in the event of a breach by Company of its obligations under this Agreement (including without limitation breaches of credit obligations), the damage (if any), caused to you thereby is not irreparable or sufficient to entitle you to injunctive or other equitable relief. You therefore agree that your rights and remedies shall be limited to the right, if any, to obtain damages at law and that you shall not have, and hereby expressly and irrevocably waive, the right to terminate or rescind this Agreement, the right to enjoin or restrain the distribution or exhibition and/or other exploitation of the Picture and/or any other form of injunctive or other equitable relief.

6. Controls. You acknowledge the right of Company to make any changes in the Picture and the preparation and exploitation thereof and/or any productions based thereon, and you hereby waive the benefits of any provision of law known as "droit moral" or any similar law of moral rights in any country of the universe.

7. Assignment. Company shall have the unencumbered right to assign this Agreement and/or any or all of Company's rights under this Agreement, provided such assignee is a major motion picture company, national television network or other similarly financially responsible party. This Agreement shall not be assigned by you under any circumstances.

8. Music. You shall not use any music (or any arrangement or orchestration hereof) in the Picture unless prior written approval and notice that such material has been cleared for such use has been obtained from Company.

9. Insurance. Company may secure life, health, accident, cast, or other insurance covering you. Such insurance shall be for Company's sole benefit and Company shall be the beneficiary thereof, and you shall not have any interest in the proceeds thereof. You shall assist in procuring such insurance by submitting to reasonable and customary or otherwise required examinations and tests and by preparing, signing, and delivering such applications and other documents as may be reasonably required. You may, at your expense, have your own physician present at any medical examination performed in connection with the Picture. You shall, to the best of your ability, observe all terms and conditions of such insurance. In the event production and cast insurance covering you cannot be obtained for normal premiums and deductibles for a person of your age and without exclusions or restrictions, Company shall have the right to terminate this Agreement and all of Company's obligations hereunder. Notwithstanding anything to the contrary contained in the foregoing, in the event that insurance covering Artist cannot be obtained for normal premiums, and without substantial exclusions, Company may terminate the Agreement prior to the commencement of Artist's services, unless you promptly pay such additional standard premium in cash directly to the insurance carrier and remove such exclusions;, provided that Company shall have no right to terminate Artist after the commencement of principal photography.You jointly and severally warrant and agree that from the date hereof until completion principal photography, you shall not travel in an airplane or other vehicle which travels by air, other than at Company's request or as a passenger on a regularly scheduled commercial airline without Company's prior written consent.

std terms acting - loanout

3

10. <u>Notices</u>. All notices and payments hereunder shall be in writing and shall be given by personal delivery, overnight courier, mailing (in a prepaid, certified or registered wrapper), or telefaxing same to the appropriate party at the addresses set forth in the Deal Memo, and five (5) business days after the date of mailing, two (2) business days after the date of delivery to overnight courier, and the date of personal delivery or telefaxing shall be the date of the giving of such notices. Copies of all notices to Company shall be sent to Law Offices of Donna L. Bascom, 15 West 81 Street, Suite 1 FR, New York, NY 10024 and copies of all notices to Lender and Artist shall be sent to United Talent Agency, 9560 Wilshire Blvd., 5th Floor, Beverly Hills, California 90212, Attn: Ms. Shani Rosenzweig, with a copy to Ziffren, Brittenham, Branca, Fischer et al, 1801 Century Park West, Los Angeles, CA 90067-6406 Attention: Matthew M. Johnson, Esq.

11. <u>Independent Contractors</u>. This Agreement does not constitute a joint venture or partnership of any kind between the parties, it being understood and agreed that the relationship between the parties hereto is one of independent contractors.

12. <u>Promotional Activities</u>. Company shall have all business and artistic controls over the promotion and publicity relating to the Picture, including but not limited to all press releases. You shall not in any communication (whether written or oral) to any third party make any reference to Company, the Screenplay, the Picture, this Agreement or any related matters, provided you shall have the right to make casual non-derogatory references in the course of general interviews to the fact of your involvement in the Picture ("Personal Publicity"), and provided further that you shall have the right to make such communications to your representatives and as required by law. No publicity issues by you, whether Personal Publicity or otherwise, shall contain derogatory mention of Company or the financiers of the Picture (or any related company or individual), the Picture, or the services of writer or others, or otherwise in connection with the Picture. Company shall have the right to require you to render reasonable publicity and promotional services, provided that you are professionally available, and subject to your reasonable approval.

13. <u>Governmental Regulation</u>. You hereby acknowledge that the monies to be paid to you under this Agreement shall be subject to the laws and regulations in or applicable to any part of the world where your services are rendered under this Agreement or where you are resident, including without limitation any laws and regulations relating to the imposition of withholding, governmental, state or local taxes which may be assessed on the aforesaid monies. You hereby agree that an amount equal to the amount of tax (if any) so assessed and paid over by Company to the relevant authority shall be deducted from the monies becoming due and payable to you under this Agreement and to the extent that Company has not deducted any such amount, you agree to reimburse such monies on demand.

14. <u>Additional Documentation</u>. You agree to execute and deliver to Company any and all additional documents and/or other instrument(s) which Company deems reasonably necessary within a reasonable time period after Company's request to effectuate the purposes of this Agreement after you have had the opportunity to review and negotiate said documents and/or instruments. In the event that you should fail or refuse to negotiate and comment any such document and/or other instrument, Company and/or its assignee shall have, and is hereby granted, the full power and authority, coupled with an interest, as attorney-in-fact for you to execute, deliver and record any and all such documents and/or other instruments. Copies of any documents so executed shall be provided to you, provided that Company's inadvertent failure to provide you with copies shall not be deemed to be a breach of the Agreement.

15. <u>No Obligation To Use</u>. Notwithstanding any other provision of this Agreement, Company has no obligation to produce or release the Picture or to continue such production or release if commenced, or to utilize your services or to include any of the results and proceeds of your services in any motion picture, television program or other production, or to exercise any of the rights granted to Company hereunder, or to continue any such use, exercise, production, release, distribution or other exploitation, if commenced.

16. <u>No Waiver</u>. No waiver by any party hereto or failure by any party to keep or perform any provision of this Agreement shall be deemed to be a waiver of any preceding or succeeding breach of the same provision, or of any other provision of this Agreement. No waiver shall be effective unless it is set forth and signed by the waiving party in a writing. The rights and remedies herein provided are cumulative and not exclusive of any rights and remedies provided by law.

std terms acting - loanout

4

17. <u>Governing Law</u>. This Agreement shall in all respects be subject to, governed by and construed in accordance with the laws of the State of Illinois applicable to contracts executed and wholly performed in said State, and each of the parties hereto submits to the exclusive jurisdiction of the state and federal courts sitting in Chicago, Illinois.

18. <u>Miscellaneous</u>. This Agreement will be binding upon, inure to the benefit of, and be enforceable by the respective successors and permitted assigns of the parties hereto, it being understood and agreed that this Agreement is expressly not intended for the benefit of any person who is not a party to this Agreement. This Agreement (including all exhibits hereto) contains the full and complete understanding and agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings between the parties (whether written or oral) relating thereto, and may not be modified or amended except by written instrument executed by the parties hereto. No agent, employee or representative of Company has any authority to make any representation or promise not contained in this Agreement, and you expressly agree that you have not executed this Agreement in reliance on any such representation or promise. You represent and agree that you have not accepted nor shall you accept valuable consideration for inclusion of any plug, reference or product identification, or of any other matter, in the Picture, unless the same is disclosed in the manner provided by law. You understand that it is Company's policy not to permit the acceptance or payment of any such consideration and that any such acceptance or payment is a material breach of this Agreement. This representation and agreement is made by you in order to comply with all applicable sections of the Federal Communications Act. Notwithstanding anything to the contrary set forth in the Deal Memo and/or in these Standard Terms and Conditions, paragraphs 1, 2, 3, 5 and 9 hereof and all of Company's other rights hereunder shall survive the expiration or other termination of this Agreement.

**END OF STANDARD TERMS AND CONDITIONS**

std terms acting - loanout