## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **Merry Gentleman, LLC,** | No. 1:13–cv-02690 |
| Plaintiff, | |
| | Hon. Judge Gary Feinerman |
| v. | |
| **George and Leona Productions, Inc., and Michael Keaton,** | Jury Trial Demanded |
| Defendants. | |
| **George and Leona Productions, Inc., and Michael Keaton,** | |
| Counterclaimants, | |
| v. | |
| **Merry Gentleman, LLC,** | |
| Counterdefendants, | |
| **Paul Duggan, Tom Bastounes, and Ron Lazzeretti,** | |
| Third-Party Defendants. | |

## ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS
## AND THIRD-PARTY COMPLAINT

Defendants George and Leona Productions, Inc. ("GLP") and Michael Keaton ("Keaton")

(collectively, "Defendants") answer the Complaint of Plaintiff Merry Gentleman, LLC

("Plaintiff") as follows:

1.      Defendants admit that Plaintiff produced a motion picture known as "The Merry

Gentleman" ("the Picture").  Defendants admit that GLP agreed to provide the acting and

directing services of Keaton, and that Keaton acted in and directed the Picture. Defendants deny the remaining allegations of Paragraph 1.

2.      Defendants admit that Plaintiff is a limited liability company organized under the laws of Illinois. Defendants lack sufficient information to admit or deny the remaining allegations of Paragraph 2.

3.      Admitted.

4.      Admitted.

5.      Defendants lack sufficient information to admit or deny whether there is diversity of citizenship. Defendants deny that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      Admitted.

7.      Defendants lack sufficient information to admit or deny the allegations of Paragraph 7.

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Defendants admit that "in 2007, Merry Gentleman LLC entered into two service agreements, one for acting and one for directing, with George and Leona Productions, Inc. f/s/o Michael Keaton." Defendants deny the remaining allegations of Paragraph 12 because the versions of the agreements attached to the Complaint do not bear the signatures of Defendants.

13.     Defendants admit that GLP agreed to the terms of the directing services agreement with Plaintiff for the services of Keaton, and that Keaton acknowledged, consented, ratified,

confirmed and agreed to the terms and provisions of a "Certificate of Employment" with Plaintiff. Defendants deny the remaining allegations of Paragraph 13.

14.     Defendants admit that GLP entered into a "Certificate of Employment" with Plaintiff, and that Keaton acknowledged, consented, ratified, confirmed and agreed to the terms and provisions of the "Certificate of Employment" with Plaintiff.

15.     Admitted.

16.     Denied.

17.     Denied.

18.     Defendants admit that the Directing Agreement called for and gave Keaton the right to deliver a first cut of the Picture, and that the Directing Agreement gave Plaintiff the right to final cut. Defendants deny the remaining allegations of Paragraph 18.

19.     Defendants admit that there were editing facilities in Santa Monica. Defendants deny the remaining allegations of Paragraph 19.

20.     Denied.

21.     Defendants admit that there were editing facilities in Bozeman, Montana. Defendants deny the remaining allegations of Paragraph 21.

22.     Denied.

23.     Defendants admit that editing occurred in California. Defendants deny the remaining allegations of Paragraph 23.

24.     Defendants admit that a cut of the Picture was delivered to Plaintiff. Defendants presently lack sufficient information to admit or deny the allegations in Paragraph 24 regarding which cut of the Picture was delivered to Plaintiff and when it was delivered.

25.     Denied.

26.    Denied.

27.    Defendants admit that Plaintiff and its agents prepared their own cut of the Picture. Defendants deny the remaining allegations in Paragraph 27.

28.    Defendants admit that Plaintiff and its agents prepared their own cut of the Picture. Defendants presently lack sufficient information to admit or deny the remaining allegations in Paragraph 28.

29.    Denied.

30.    Denied.

31.    Defendants lack sufficient information to admit or deny the allegations in Paragraph 31 that "Upon completion of the Chicago cut and Keaton's second cut in October 2007, both versions of the film were screened by plaintiff, which concluded that although Keaton's second cut was an improvement over the first, the Chicago cut was better, including being better positioned for critical and commercial success." Defendants lack sufficient information to admit or deny the allegations in Paragraph 31 that "Plaintiff's concerns about Keaton's second cut included the conclusion that the musical score (also known as a film's background or incidental music) — for which Keaton had hired his son, who had no relevant professional experience — was simply not good, and did not enhance the film." Defendants deny that "[u]nder the terms of the parties' agreements, these determinations — *i.e.*, how to proceed following the director's cut — were in the discretion of plaintiff, as producer."

32.    Defendants admit that Plaintiff submitted a "cut of 'The Merry Gentleman' to the director of the Sundance Film Festival . . . ." Defendants lack sufficient information to admit or deny the remaining allegations of Paragraph 32.

33.     Defendants admit that the Picture premiered at the Sundance Film Festival in January 2008 at the Eccles Theatre.  Defendants lack sufficient information to admit or deny the remaining allegations of Paragraph 33.

34.      Defendants lack sufficient information to admit or deny the allegations of Paragraph 34.

35.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 35.

36.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 36.

37.     Defendants admit that Keaton informed Gilmore that the version of the Picture that had been submitted to Sundance was not Keaton's cut.  Defendants deny the remaining allegations of Paragraph 37.

38.     Denied.

39.     Denied.

40.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 40.

41.     Defendants lack sufficient information to admit or deny the allegations of Paragraph 41.

42.     Defendants admit that Plaintiff entered into a Confidential Settlement Agreement and Release with GLP and Keaton.  Defendants deny the remaining allegations of Paragraph 42.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Defendants admit that Keaton continued to have duties with respect to the Picture after execution of the Settlement and Release.  Defendants do not have sufficient information to admit or deny the remaining allegations of Paragraph 46.

47.     Denied.

48.     Defendants deny the allegation in Paragraph 48 that "Following the execution of the Settlement and Release, Keaton selected music (previously existing popular music to be licensed for use in the film, as distinct from the score) for the Sundance screening that was well over the film's music budget, notwithstanding that Keaton was aware of and bound to honor that budget."  Defendants deny the allegation in Paragraph 48 that "When Keaton was informed that the music he had chosen was not within budget, he simply insisted that his selections were 'in,' and refused to discuss the matter further."  Defendants do not have sufficient information to admit or deny the allegation in Paragraph 48 that "While plaintiff was able to secure the rights to that music for purposes of the Sundance screening through acquisition of a one-time 'festival' license, the use of that same music in the theatrical release would have resulted in a budget overrun of some $400,000."

49.     Admitted.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Admitted.

54.     Denied.

55.      Defendants admit that Keaton appeared on ABC's *Good Morning America* on April 23, 2009 to promote the Picture's release.  Defendants deny all other allegations in Paragraph 55.

56.      Defendants admits that a clip from the Picture was shown on *Good Morning America*.  Defendants further admit that Keaton stated he was not sure where to look while the clip was shown.  Defendants deny all other allegations in Paragraph 56.

57.      Denied.

58.      Defendants incorporate their responses to Paragraphs 1 to 57 in response to Paragraph 58.

59.      Defendants admit that GLP had a valid and binding director's contract with Plaintiff.  Defendants deny that Keaton had a valid and binding director's contract with Plaintiff.

60.      Denied.

61.      Denied.

62.      Denied.

## AFFIRMATIVE DEFENSES

By alleging the following affirmative defenses, Defendants are not in any way agreeing or conceding that they have the burden of proof or the burden of persuasion on any of these issues.

## FIRST AFFIRMATIVE DEFENSE

## (Failure to State a Cause of Action)

As a separate and affirmative defense, Defendants allege that each and every cause of action in the Complaint has failed to state facts sufficient to constitute a cause of action against them.

### SECOND AFFIRMATIVE DEFENSE

### (Performance of Duties)

Defendants have fully performed any and all contractual duties to Plaintiff, and Plaintiff is therefore estopped to assert any cause of action against them.

### THIRD AFFIRMATIVE DEFENSE

### (Unclean Hands)

As a result of Plaintiff's knowledge, conduct, words and/or actions, Plaintiff's claims are barred in whole or in part by its unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

### (Estoppel)

As a result of Plaintiff's knowledge, conduct, words and/or actions, Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

### FIFTH AFFIRMATIVE DEFENSE

### (Laches)

As a result of Plaintiff's knowledge, conduct, words, actions or failure to act, Plaintiff's claims are barred in whole or in part by the doctrine of laches in that Plaintiff unreasonably delayed in bring this action against Defendants.

### SIXTH AFFIRMATIVE DEFENSE

### (Settlement Agreement and Release)

Plaintiff has waived and released any and all of the alleged claims asserted in the Complaint and in each and every claim therein by virtue of the Confidential Settlement Agreement and Release entered into between the parties.

## SEVENTH AFFIRMATIVE DEFENSE

### (Waiver)

As a result of Plaintiff's knowledge, conduct, words and/or actions, Plaintiff has waived any and all of the alleged claims asserted in the Complaint.

## EIGHTH AFFIRMATIVE DEFENSE

### (Acquiescence)

The claims in the Complaint are barred in whole or in part because the conduct alleged was undertaken, if at all, with Plaintiff's knowledge, acquiescence, ratification, approval, and/or consent.

## NINTH AFFIRMATIVE DEFENSE

### (Lack of Damages)

Plaintiff's claims are barred because Plaintiff suffered neither damages nor injury, and any damages or injury alleged are attributable to causes other than any asserted acts or omissions of Defendants, including without limitation, as a result of Plaintiff's knowledge, conduct, words and/or actions.

## TENTH AFFIRMATIVE DEFENSE

### (Speculative Damages)

Plaintiff cannot recover any of the damages alleged in the Complaint because such damages, if any, are too speculative to be recoverable at law.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Defendants are informed and believe and thereupon allege that Plaintiff, in the exercise of reasonable diligence, could have mitigated the alleged monetary damages to itself, and that Plaintiff has failed to exercise such reasonable diligence and has not mitigated such alleged

monetary damages.  Accordingly, Plaintiff is barred, in whole or in part, from recovering any damages from Defendants.

## TWELFTH AFFIRMATIVE DEFENSE

### (Prevention/Frustration of Performance)

Plaintiff frustrated or prevented Defendants from performing any of the acts that Plaintiff alleges Defendants should have performed.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Reservation of Rights)

Defendants have insufficient information upon which to form a belief as to whether they may have additional unstated affirmative defenses.  Defendants reserve the right to assert additional affirmative defenses in the event discovery indicates that they are appropriate.

WHEREFORE, Defendants pray for judgment as follows:

1.      That Plaintiff take nothing by way of its Complaint;

2.      For costs of suit incurred herein; and

3.      For such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Defendants and Counterclaimants George and Leona Productions, Inc. ("GLP") and Michael Keaton ("Keaton") (collectively, "Counterclaimants") hereby counterclaim against Plaintiff and Counter-defendant Merry Gentleman, LLC and Third-Party defendants Paul Duggan, Tom Bastounes, and Ron Lazzeretti (collectively, "Counter-defendants") as follows:

## JURISDICTION

1.      Jurisdiction is proper in this Court pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).  Counterclaimants are informed and believe that jurisdiction is also proper pursuant to 28 U.S.C. § 1332, in that the parties are of diverse

citizenship, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (3), in that a substantial portion of the events or omissions complained of occurred within this judicial district, and in that Counter-defendants are subject to this Court's personal jurisdiction.

## THE PARTIES

3.     GLP is, and at all relevant times herein was, a corporation organized and existing under the laws of the State of California with its principal place of business in Los Angeles County, California.

4.     Keaton is, and at all relevant times herein was, a citizen of the State of Montana.

5.     Counterclaimants allege that Merry Gentleman, LLC ("MG") is a limited liability company organized and existing under the laws of the State of Illinois with its principal place of business in Chicago, Illinois.

6.     Counterclaimants are informed and believe, and based thereon allege, that Paul Duggan is an individual residing in the State of Illinois.

7.     Counterclaimants are informed and believe, and based thereon allege, that Tom Bastounes is an individual residing in the State of Illinois.

8.     Counterclaimants are informed and believe, and based thereon allege, that Ron Lazzeretti is an individual residing in the State of Illinois.

## FACTUAL ALLEGATIONS

9.     GLP and MG are parties to an agreement, dated as February 1, 2007, for the directing services of Keaton ("the Directing Agreement") in connection with the motion picture entitled, "The Merry Gentleman" ("the Picture").  Keaton is defined as "Artist" in the Directing Agreement.

10.     Paragraph 4.2 of the Directing Agreement provides that "Artist shall be accorded all of the cutting rights specified in the DGA Low Budget Basic Agreement.  For the avoidance of doubt, Artist shall be accorded all of the cutting rights specified in the DGA Low Budget Basic Agreement (i.e., one cut and one recruited audience screening) . . . ."  Keaton is a third-party beneficiary of all provisions of the Agreement providing cutting rights to "Artist."

11.     Section 7-501 of The DGA Basic Agreement (2008) further provides the following:

> The Director shall be responsible for the presentation of his or her cut of the motion picture (herein referred to as the "Director's Cut") and it is understood that his or her assignment is not complete until he or she has presented the Director's Cut to the Employer, subject to the terms and conditions of this BA, as soon as possible within the time period hereinafter provided for.
>
> Subject to Paragraph 7-505(g)(2), no one other than the Director may supervise the editing of the first cut of the film following completion of the editor's assembly, but if the Director refuses to, or due to incapacity, cannot supervise the first cut, the Employer may assign another person to edit the film.  Within one (1) day following such an assignment, the Employer shall send the Guild written notice thereof.

12.     Section 7-504 of The DGA Basic Agreement (2008) further provides the following:

> No one shall be allowed to interfere with the Director of the film during the period of the Director's Cut. There shall be no "cutting behind" the Director as that term is commonly understood in the motion picture industry.  The term "cutting behind" means any editing prohibited by the terms of this BA, including editing by electronic means.  When a release date must be met in an emergency, the Director's cutting time may be reduced to an amount of time equal to one-half the actual time period available for cutting.

13.     In direct contravention of the Directing Agreement and the DGA Basic Agreement, MG "cut[] behind" Keaton and prepared its own "Chicago cut" of the Picture.

12

14.     Counterclaimants are informed and believe that Duggan, Bastounes and Lazzeretti were either involved in editing the Chicago cut prepared by MG, or instructed, assisted, supervised, or directed others to prepare the Chicago cut.

15.     MG admits that it distributed a copy of the Chicago cut to third parties, including officials at the Sundance Film Festival.

## COUNT I

### (Breach of Contract – Against MG)

16.     Counterclaimants hereby incorporate by reference and reallege the allegations contained in Paragraphs 1-15 herein.

17.     Counterclaimants have performed all conditions, covenants, and promises required on their part with respect to the terms and conditions of the Directing Agreement.

18.     MG has breached the Directing Agreement by preparing its own cut of the Picture prior to Keaton preparing his Director's cut, and by interfering in Keaton's ability to prepare his Director's cut.

19.     Counterclaimants have been damaged in an amount exceeding $75,000 as a result of MG's breach.

## COUNT II

### (Intentional Interference With Contract – Against Duggan, Bastounes, and Lazzeretti)

20.     Counterclaimants hereby incorporate by reference and reallege the allegations contained in Paragraphs 1-19 herein.

21.     Third-Party Defendants Duggan, Bastounes, and Lazzeretti were aware of the existence of a valid contractual relationship between Counterclaimants, on the one hand, and MG, on the other hand, in the form of the Directing Agreement.

22.    Counterclaimants are informed and believe that Duggan, Bastounes and Lazzeretti have intentionally interfered with the contract between Counterclaimants and MG by either being involved in editing the Chicago cut prepared by MG, or instructing, assisting, supervising, or directing others to prepare the Chicago cut.

23.    As a direct and proximate result of Duggan, Bastounes, and Lazzeretti's interference in the valid contractual relationships alleged herein, Counterclaimants have suffered monetary damages in an amount to be proven at trial, which exceeds $75,000.

24.    Duggan, Bastounes, and Lazzeretti have acted willfully, maliciously, and in wanton disregard of Counterclaimants rights under the agreements alleged herein.  As a result of such conduct, Counterclaimants hereby seek exemplary and punitive damages.

WHEREFORE, Counterclaimants pray for judgment as follows:

1.    For an award of compensatory damages in an amount to be proven at trial;

2.    For punitive damages;

3.    For pre-judgment and post-judgment interest;

4.    For costs of suit; and

5.    For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Counterclaimants hereby make a demand for a trial by jury on all issues triable to a jury.


Dated:  September 18, 2013                    Respectfully submitted,

 s/ Hamilton Hill
Sidney Herman (# 3121807)
Hamilton Hill (# 6275123)
Chris Hagale (# 6306085)
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street
Chicago, IL  60654

14

Telephone: (312) 494-4400
Facsimile:  (312) 494-4440
skip.herman@bartlit-beck.com
hamilton.hill@bartlit-beck.com
chris.hagale@bartlit-beck.com

Michael J. Kump
Jeremiah Reynolds
KINSELLA WEITZMAN ISER
KUMP & ALDISERT LLP
808 Wilshire Blvd., 3rd Floor
Santa Monica, California 90401
Telephone:  310-566-9800
Facsimile:  310-566-9850

*Attorneys for Defendants-Counterclaimants George
and Leona Productions, Inc. and Michael Keaton*

## <u>CERTIFICATE OF SERVICE</u>

I, Hamilton Hill, an attorney, hereby certify that a true and correct copy of the foregoing

document entitled *Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint* was

electronically filed with the Clerk of the Court for the Northern District of Illinois using the

CM/ECF System and emailed to counsel listed below on September 18, 2013.


Matthew Tanner
Tanner & Lehman LLC
53 W. Jackson Blvd., Suite 400
Chicago, IL 60604
Telephone: (312) 588-1970
mtanner@tannerlehman.com

*Attorney for Plaintiff-Counterdefendant Merry Gentleman, LLC*


<u>/s/ Hamilton Hill</u>
Hamilton Hill
Bartlit Beck Herman Palenchar & Scott LLP
54 West Hubbard Street
Chicago, IL 60654
Telephone: (312) 494-4400
Facsimile: (312) 494-4440
hamilton.hill@bartlit-beck.com

*Attorney for Defendants-Counterclaimants George and Leona Productions, Inc. and Michael Keaton*