**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Merry Gentleman, LLC,** | |
| Plaintiff, | |
| v. | No. 1:13-cv-02690 |
| **George and Leona Productions, Inc., and Michael Keaton,** | Judge Feinerman |
| Defendants. | |
| **George and Leona Productions, Inc., and Michael Keaton,** | |
| Counter-Claimants, | |
| v. | |
| **Merry Gentleman, LLC,** | |
| Counter-Defendant, | |
| **Paul Duggan,** | |
| Third-Party Defendant. | |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION FOR AN ORDER DISMISSING ACTION WITH PREJUDICE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.      INTRODUCTION ...................................................................................................1

II.     DEFENDANTS HAVE STANDING TO RAISE THE ARGUMENTS IN THEIR
        MOTION TO DISMISS ..........................................................................................2

III.    DUGGAN DID NOT BECOME MANAGER BY FORECLOSING ON A LOAN .........4

        A.      Duggan's Declaration Is In Conflict With His Prior Deposition Testimony..........4

        B.      Plaintiff And Duggan Failed To Produce The Exhibits To Duggan's
                Declaration In Discovery ........................................................................9

IV.     THE ISSUE OF WHETHER BASTOUNES INITIALLY "AUTHORIZED" THE
        LAWSUIT IS IRRELEVANT FOR DEFENDANTS' MOTION TO DISMISS .............13

V.      CONCLUSION.......................................................................................................14

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Bd. of Dirs. of Kennelly Square Condo. Ass'n v. MOB Ventures, L.L.C.*,
  359 Ill.App.3d 991, 296 Ill.Dec. 700, 836 N.E.2d 115 (Ill. App. Ct. 2005).......................3

*Chaparro v. City of Chicago*,
  No. 11 C 2659, 2014 WL 2619468 (N.D. Ill. June 12, 2014) ...................................4, 5, 9

*River Plaza Homeowner's Ass'n v. Healey*,
  389 Ill.App.3d 268, 904 N.E.2d 1102, 328 Ill.Dec. 592 (Ill. App. Ct. 2009)................3, 4

*Port Liberte II Condo. Ass'n, Inc. v. New Liberty Residential Urban Renewal Co.*,
  86 A.3d 730 (N.J. Super. Ct. App. Div. 2014)....................................................................4

*Russell v. Acme–Evans Co.*,
  51 F.3d 64 (7th Cir. 1995) .............................................................................................4, 9

*United States v. Funds in Amount of One Hundred Thousand One Hundred and Twenty
  Dollars*,
  730 F.3d 711 (7th Cir. 2013) ........................................................................................5, 9

*Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) .........................................................................................10

## <u>RULES</u>

Fed. R. Civ. P. 37(c)(1).................................................................................................2, 9, 10

I.    **INTRODUCTION**

Third-Party Defendant Paul Duggan ("Duggan"), acting as the purported Manager of

Plaintiff Merry Gentleman, LLC ("MGLLC"), offers three reasons why Defendants' Motion for

an Order Dismissing Action With Prejudice should be denied.  Each of his arguments fails.

First, citing a case decided under New Jersey law, Duggan argues that Defendants lack standing

to argue that he lacks standing to bring this action on behalf of MGLLC.  But there is clear

precedent under Illinois law, which governs both MGLLC and this action, authorizing

Defendants to file a motion to dismiss arguing that Duggan does not have standing under Illinois

law to bring this action.[1]  And the New Jersey case cited by Duggan is distinguishable because

New Jersey law on the issue of standing is fundamentally different than Illinois law.  (*See infra*

pp. 2-4.)

Second, Duggan alleges for the first time that he became Manager of MGLLC by

exercising a "Power of Attorney" that MGLLC gave to Jackson Boulevard Partners, LP

("Jackson Blvd.") in connection with a loan on which MGLLC later defaulted.  Duggan's

testimony in his Declaration regarding how he allegedly became MGLLC's Manager through the

"Power of Attorney" should be disregarded because it is in conflict with his prior deposition

testimony.  Despite specific questions about his becoming Manager, Duggan never mentioned

the "Power of Attorney" at his deposition, instead testifying that the other MGLLC members

voted him into the position of Manager.  Now he offers a completely different story as to how he

---

[1] MGLLC was formed under Illinois law and the LLC Agreement at issue specifically contains an Illinois choice-of-law clause stating that "This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without regard to principles of conflicts of law."  (Bastounes Decl. Ex. A, § 11.04, D.I. 55-1.)  Furthermore, the relevant directing agreement at issue between MGLLC and Defendants contains an Illinois choice-of-law clause. (Compl. Ex. B, p. 15, D.I. 1-2.)

took control of MGLLC because he realized his prior deposition testimony was legally and factually untenable. (*See infra* pp. 4-9.)

To make this second argument, Duggan relies upon a series of documents *never produced* in this action. Pursuant to Federal Rule of Civil Procedure 37(c)(1), Duggan should be prohibited from relying upon these documents attached to his Declaration and from making this argument given that (i) he and his attorney failed to turn over any of these documents in discovery despite several specific requests from Defendants, and (ii) he and his attorney affirmatively represented to Defendants' counsel that *all* responsive documents concerning Duggan becoming MGLLC's Manager had been produced. (*See infra* pp. 9-13.)

Third, Duggan argues that this Motion should be denied because "Mr. Bastounes authorized, both in word and deed, the bringing of this suit." This argument is irrelevant because, even assuming *arguendo* that Bastounes initially authorized this lawsuit (which he did not), Bastounes has asked that this action be dismissed because he now believes it does not have merit and has the potential to harm MGLLC's interests. Duggan never argues that MGLLC's Manager lacks the power to request dismissal of this action under these circumstances, even if the Manager initially authorized the filing. (*See infra* pp. 13-14.)

Accordingly, for all the reasons set forth in the moving papers and below, Defendants respectfully request that their Motion to Dismiss this action be granted.

## II.    DEFENDANTS HAVE STANDING TO RAISE THE ARGUMENTS IN THEIR MOTION TO DISMISS

Duggan argues that Defendants do not have standing to bring this Motion to Dismiss. (Opp'n at 1-3.) As an initial matter, Duggan's argument completely ignores that here the true manager of MGLLC has submitted a declaration in this action stating that the case should be dismissed, so Duggan's only cited case is not on point. Regardless, it is clear under Illinois law

that Defendants have standing to raise Duggan's lack of standing in a motion to dismiss. In *River Plaza Homeowner's Ass'n v. Healey*, 389 Ill.App.3d 268, 904 N.E.2d 1102, 328 Ill.Dec. 592 (Ill. App. Ct. 2009), defendant-developers sought dismissal of an action on the ground that plaintiff – a condominium association's board of directors – lacked standing to sue on behalf of the condominium association to stop the developers from constructing an adjacent development. The court held that defendants had the right to bring a motion to dismiss because they were arguing that the board of directors lacked standing to sue on behalf of the condominium association. *Id.* at 281. The court also held that the board of directors lacked standing to file the lawsuit because they had not obtained the consent of 2/3 of the homeowners before bringing the lawsuit. *Id.*

The Illinois court specifically *rejected* the plaintiff's argument that the defendants lacked standing to raise the board's lack of standing. The court noted that "[t]he board cites a 1928 case for the proposition that, 'generally speaking,' when the bylaws of a corporation require the shareholders' consent, only the shareholders themselves can 'urge' the issue of lack of consent." *Id.* The court held that the defendant-developers could raise the board's lack of standing under the more recent case of *Bd. of Dirs. of Kennelly Square Condo. Ass'n v. MOB Ventures, L.L.C.*, 359 Ill.App.3d 991, 296 Ill.Dec. 700, 836 N.E.2d 115 (Ill. App. Ct. 2005), holding that:

> [i]n *Kennelly,* the board brought suit, and a few unit owners sought
> to file an intervening complaint. *Kennelly,* 359 Ill.App.3d at 992–
> 93, 296 Ill.Dec. 700, 836 N.E.2d 115. Although the board did not
> challenge the owners' right to sue, defendants did. *Kennelly,* 359
> Ill.App.3d at 993, 296 Ill.Dec. 700, 836 N.E.2d 115. This court
> permitted defendants to assert the issue of exclusive authority,
> even though that authority belonged to the board. *Kennelly,* 359
> Ill.App.3d at 993–94, 296 Ill.Dec. 700, 836 N.E.2d 115.

*Id.* Thus, the court in *River Plaza* concluded: "In sum, *we find that the board lacked standing to bring this suit*, because of its failure to comply with the two-thirds rule in the bylaws . . . *and that*

3

*defendants had standing to raise plaintiff's lack of standing.*" *Id.* (emphasis added). Indeed, the court held that because the board lacked standing, the court did not have jurisdiction to hear the case. *Id*. at 282.

The Illinois cases of *River Plaza* and *Kennelly* demonstrate that Duggan's standing to bring this suit on behalf of MGLLC is a jurisdictional issue under Illinois law that may be raised by the Defendants. It is critical to note that the *River Plaza* case is specifically cited in the New Jersey case relied upon by Duggan – *Port Liberte II Condo. Ass'n, Inc. v. New Liberty Residential Urban Renewal Co.,* 86 A.3d 730 (N.J. Super. Ct. App. Div. 2014). The New Jersey court, however, distinguished *River Park* on the ground that under "Illinois law, standing is jurisdictional, while under New Jersey law it is not." *Id.* at 740 n.5. Thus, the only alleged support for Duggan's argument falls apart upon examination. Defendants' Motion has merit.

## III.    DUGGAN DID NOT BECOME MANAGER BY FORECLOSING ON A LOAN

Duggan now claims that he became MGLLC's Manager by exercising a "Power of Attorney" given to Jackson Blvd. in connection with a loan to MGLLC. According to Duggan, when MGLLC allegedly defaulted on the loan, Duggan exercised the "Power of Attorney" to seize control of MGLLC. (Opp'n at 4-5.) This argument must be rejected because (i) Duggan's testimony in his recent Declaration is in conflict with his prior deposition testimony, and (ii) Duggan failed in discovery to produce the documents upon which he now relies.

### A.    Duggan's Declaration Is In Conflict With His Prior Deposition Testimony

"The Seventh Circuit 'ha[s] been highly critical of efforts to patch up a party's deposition with his own subsequent affidavit.'" *Chaparro v. City of Chicago*, No. 11 C 2659, 2014 WL 2619468, *2 (N.D. Ill. June 12, 2014) (*quoting Russell v. Acme–Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995)). "*Where deposition testimony and an affidavit are in conflict, the affidavit is to be*

4

*disregarded* 'unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy.'" *Id.* (emphasis added); *see also United States v. Funds in Amount of One Hundred Thousand One Hundred and Twenty Dollars*, 730 F.3d 711, 718 (7th Cir. 2013) ("[W]e do not allow litigants to manufacture material fact questions by affidavit testimony that contradicts prior sworn testimony.").

Duggan's Declaration is fundamentally inconsistent with his deposition testimony in this case and should be disregarded. Duggan now claims in his Declaration attached to his Opposition that he acquired control of MGLLC on January 13, 2010, when he sent a letter to Bastounes (attached as Exhibit E to Duggan's Declaration) notifying Bastounes that he was exercising a "Power of Attorney" on behalf of Jackson Blvd. because MGLLC had "defaulted" on its loan from Jackson Blvd. During his deposition, Duggan never once mentioned a "Power of Attorney," instead testifying that he became Manager of MGLLC *in 2007*, before the movie was released and long before any purported default:

> Q. [Defense counsel] You believe in 2007 that you were made also manager of Merry Gentleman LLC, along with Mr. Bastounes?
>
> A. [Duggan] That's my recollection.
>
> Q. How did that happen?
>
> A. We were just sharing responsibilities, so it made it easier to run the business that way.
>
> Q. Is there any written document that you are aware of sitting here today where you were appointed manager of Merry Gentleman LLC?
>
> A. I believe filings with the Secretary of State.
>
> Q. And have you turned those filings over to your attorney in this case?
>
> A. Yes.

5

Q. Other than filings with the Secretary of State, are you aware of any other documents that would show you being made a manager of Merry Gentleman LLC?

A. No.

(Hagale Decl. Ex. 1 (Duggan Dep. at 23:13-24:8), D.I. 55-2.)  None of the Secretary of State documents that Plaintiff or Duggan produced prior to his deposition show Duggan taking control of MGLLC through a "Power of Attorney."  And as explained below, Exhibits D through G to Duggan's Declaration were not previously produced in discovery, and Duggan *never* once referred to any of those documents throughout his deposition.

Instead, Duggan testified both that he became sole Manager of MGLLC to "simplify the structure" and that the other Members of MGLLC "voted to change the manager from Southwater Pictures to Paul Duggan."  Duggan never mentioned becoming Manager in the way now discussed in his Declaration.

Q. When was Mr. Bastounes removed as manager of Merry Gentleman LLC?

A. [Duggan] I don't know if "removed" is the right term, but I became sole manager approximately 2009.

Q. Can you describe in your own words how Mr. Bastounes came to be no longer the manager of Merry Gentleman LLC?

A. Yes.

Q. Please do so.

A. It was – it was for a – on a day-to-day basis the function of Merry Gentleman was to – in 2009 was to attempt to distribute the movie, raise money for distribution and manage that process, and that responsibility basically went to me. So, to simplify the structure, the way to sign documents and other issues, I became the sole manager.

Q. Are there any written documents that you are aware of that show the replacement of Mr. Bastounes as manager with yourself solely as manager?

A. Yes.

Q. What documents are those?

6

A. The filings with the Secretary of State.

Q. . . . Besides the Secretary of State filings, are you aware of any other documents that show Mr. Bastounes leaving the position of manager of Merry Gentleman LLC and you being appointed as sole manager?

A. No.

(*Id.* at 27:7-28:15.)

Q. What is that document?

A. [Duggan] The filing with the Secretary of State.

Q. And you believe that contains Mr. Bastounes's signature on it?

A. Yes.

Q. If that document does not contain Mr. Bastounes's signature, are you aware of any other documents where Mr. Bastounes has signed in writing a consent to be replaced as manager of Merry Gentleman LLC?

A. I don't know that Mr. Bastounes is the manager. I think it's Southwater Pictures was the manager, now replaced by me.

Q. Okay. I agree with you. You agree that Southwater Pictures LLC is the manager, correct?

A. No. They were the manager.

Q. Okay, they were the manager. So, the Southwater Pictures LLC would need to sign a written document consenting to be replaced as manager of Merry Gentleman LLC, correct?

MR. TANNER: Objection, foundation. You can answer.

BY THE WITNESS:

A. No. The members voted to change the manager from Southwater Pictures to Paul Duggan, majority of the members.

(*Id.* at 47:3-48:4.)

Q. Did any other members besides yourself and Mr. Bastounes approve Southwater Pictures being replaced by yourself as manager of Merry Gentleman LLC?

A. [Duggan] Yes.

7

Q. Who else?

A. James Boyd, Marlin Capital, Dennis Nardoni.

Q. Okay. Is there a written document reflecting that James Boyd approved Southwater Pictures being replaced as manager of Merry Gentleman LLC?

A. Not sure.

(*Id*. at 51:3-15.)

Q. Are you aware of any written documents reflecting any notifications that you provided to members of Merry Gentleman LLC about the issue of Southwater Pictures being replaced as manager of Merry Gentleman LLC?

A. No.

(*Id*. at 53:1-6.)

Duggan now provides a detailed discussion in his Declaration of how he is purportedly the 50% owner of Southwater Pictures, LLC, attaching several documents that were not provided in discovery.[2]  Again, Duggan's Declaration is entirely inconsistent with his prior deposition testimony where he said that Southwater was a d/b/a or alter-ego for Bastounes, and that he could not even recall its owner:

Q. Have you ever heard of an entity called Southwater Pictures LLC?

A. [Duggan] Yes.

Q. Who is the owner of that entity?

A. Don't know.

Q. How did you come to hear the name Southwater Pictures LLC?

A. It was, I believe, a alter ego or d/b/a for Tom Bastounes.

Q. What do you mean by the term "alter ego" for Tom Bastounes?

---

[2] Duggan also argues that Bastounes cannot be MGLLC's Manager because Southwater Pictures, LLC has been dissolved.  (Opp'n at 5 n.2.)  This claim is another red herring because, as Bastounes explained, Southwater was merely his d/b/a or "alter ego," so even if the LLC was dissolved, that did not and could not remove Tom Bastounes as MGLLC's Manager.  (Bastounes Decl., ¶ 3.)

A. I think it was his e-mail address.

Q. Do you know whether it was ever officially formed as an entity?

A. I do not.

Q. Do you recall signing any documents that listed Southwater Pictures as the manager of Merry Gentleman LLC?

A. No.

(Hagale Decl. Ex. 1 (Duggan Dep. at 29:24-30:18).)

The reasonable inference is that after Duggan read Defendants' Motion to Dismiss, he realized that his deposition testimony as to how he became Manager was both factually and legally untenable for the reasons set forth in the Motion. Whatever the reason, Duggan's Declaration should be disregarded in its entirety because it is in conflict with his prior deposition testimony in this case. *See Russell*, 51 F.3d at 67; *Funds in Amount of One Hundred Thousand One Hundred and Twenty Dollars*, 730 F.3d at 718; *Chaparro*, 2014 WL 2619468 at *2.

### B.     Plaintiff And Duggan Failed To Produce The Exhibits To Duggan's Declaration In Discovery

The record is clear that (a) Defendants in discovery asked Plaintiff and Duggan to produce any and all documents concerning the authority to file this action; (b) those parties produced certain documents; (c) those parties and their counsel represented that all relevant documents had been produced; and (d) then after discovery was closed and Defendants filed this Motion, Duggan opposed the Motion by attaching a slew of documents to his Declaration that had *never* been produced. Such conduct is a clear violation of Federal Rule of Civil Procedure 37(c)(1), which provides an *automatic* sanction for failure to comply with the mandatory disclosure provisions of Rule 26(a), or the supplemental disclosure provisions of Rule 26(e)(1), even in the absence of a prior court order. Under Rule 37(c)(1), documents or other information not properly disclosed in discovery *cannot* be used as evidence on a motion. *See Fed. R. Civ. P.*

9

37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). This provision is self-executing – *i.e.*, it does not require a motion to compel. Fed. R. Civ. P. 37 advisory committee's notes (1993 amendments); *Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (acknowledging that the sanction under Fed. R. Civ. P. 37(c)(1) is "self-executing" and "automatic").

Accordingly, Exhibits D, E, F, and G attached to Duggan's Declaration in support of his Opposition to this Motion should not be considered by the Court under Rule 37(c)(1) because neither Plaintiff nor Duggan turned over these documents in discovery despite clear requests for all such documents.

On January 5, 2014, Defendants served separate Requests For Production ("Requests") on both Plaintiff *and* Duggan individually. (Supplemental Declaration of Jeremiah Reynolds ("Reynolds Decl."), Exs. 1 and 2.) The Requests included several specific requests seeking documents that would establish how Duggan or Jackson Blvd. became the Manager of MGLLC, and how Duggan or Jackson Blvd. had authority to cause MGLLC to file the instant lawsuit. For example, the Requests to Plaintiff included the following separate requests:

**REQUEST FOR PRODUCTION NO. 71**:

All documents, including without limitation all communications, showing that Duggan was designated, appointed, or elected a manager of Merry Gentleman, LLC.

**REQUEST FOR PRODUCTION NO. 72**:

All documents, including without limitation all communications, showing that Jackson Boulevard Capital Management LTC was designated, appointed, or elected a manager of Merry Gentleman, LLC.

**REQUEST FOR PRODUCTION NO. 79**:

All documents, including without limitation all communications, demonstrating that Duggan and Jackson Boulevard Capital Management LTC had authority to cause Merry Gentleman, LLC to file the instant lawsuit.

**REQUEST FOR PRODUCTION NO. 80**:

All documents, including without limitation all communications, demonstrating that Paul Duggan and Jackson Boulevard Capital Management LTC attempted to obtain or did obtain the consent of any members of Merry Gentleman, LLC to file the instant lawsuit.

**REQUEST FOR PRODUCTION NO. 86:**

All documents, including without limitation all communications, between Duggan and any members of Merry Gentleman, LLC.

(Reynolds Decl. Ex. 1.) The separate Requests to Duggan in his capacity as a Third-Party Defendant included identical requests to the above. (*Id.*, Ex. 2.)

Plaintiff and Duggan had until February 10, 2014 to respond to the Requests, but failed to do so. (*Id.*, ¶ 4.) Defendants' counsel contacted Plaintiff's/Duggan's counsel on February 13, 2014 inquiring about the failure to respond to the Requests, and counsel responded he would "follow up." (*Id.*, Ex. 3.) On February 20, 2014, counsel for Plaintiff/Duggan emailed documents responsive to the Requests, including Secretary of State filings relating to MGLLC's management, a Subscription Agreement signed by Duggan for his investment in MGLLC, and the Second Amended Operating Agreement for MGLLC. (*Id.*, ¶ 6.)

On February 24, 2014, Defendants' counsel inquired as to whether Plaintiff and Duggan had produced all responsive documents, and asked that Plaintiff and Duggan provide a written response to the Requests. (*Id.*, Ex. 4.) On February 26, 2014, counsel for Plaintiff/Duggan responded: "That is the entirety, Jeremiah. Here are written responses (also coming to you in the mail)." (*Id.*) The written Responses from Plaintiff and Duggan contain a single omnibus response *to all* of Defendants' document requests, stating the following: "Plaintiff and/or

responding party have produced all responsive, non-privileged documents in their possession, custody, or control that have been identified through a reasonably diligent search." (*Id.*, Exs. 5 and 6.)

At Duggan's deposition on March 4, 2014, Duggan and his counsel represented that Duggan had provided all documents demonstrating that he had been appointed Manager of MGLLC to his attorney. (Hagale Decl. Ex. 1 (Duggan Dep. at 23:20-24:8, 48:7-24, 55:18-56:16).)

Despite all of the above representations, Exhibits D, E, F, and G to Duggan's Declaration in support of his Opposition to the Motion *were never previously produced in this case*. (Reynolds Decl., ¶ 8.) The failure to produce these responsive documents cannot be considered "substantially justified" or "harmless." These documents are clearly responsive to Defendants' Requests as they specifically go to the issue of who is the proper Manager of MGLLC and whether Duggan had authority to file this lawsuit on its behalf. Plaintiff and Duggan, and their counsel, have not explained their failure to produce these documents during the discovery period. And neither Plaintiff nor Duggan supplemented their prior discovery responses, despite a clear and unambiguous obligation to do so.

The failure to produce these documents also caused serious and direct harm to Defendants because it prevented them from asking Duggan any questions at his deposition concerning these documents, or conducting any inquiry during the discovery period into the authenticity and enforceability of these documents. Worse, as explained above, Duggan's testimony at his deposition is fundamentally inconsistent and misleading when compared to both his Declaration and the documents attached to his Declaration.

12

Finally, for approximately ten years, Duggan's primary profession was serving as a retained expert witness in litigation, including testifying several times in the Northern District of Illinois. Duggan is intimately familiar with the litigation process and the obligation to produce responsive documents and supplement discovery responses. He also has retained experienced lawyers to represent him. There is no legitimate excuse for failing to produce these documents during the discovery period.

**IV.** **THE ISSUE OF WHETHER BASTOUNES INITIALLY "AUTHORIZED" THE LAWSUIT IS IRRELEVANT FOR DEFENDANTS' MOTION TO DISMISS**

Duggan's third argument misses the fundamental point of Defendants' Motion. (Opp'n at 3.) Tom Bastounes, the duly appointed Manager of MGLLC, *now* seeks to voluntarily dismiss this lawsuit on the grounds that it lacks merit and is detrimental to MGLLC's interests. Moreover, Bastounes's Declaration and his earlier deposition testimony are wholly consistent – *i.e.*, Bastounes did *not* authorize Plaintiff or Duggan to file this lawsuit and, in fact, attempted to talk Duggan out of filing this action. (Reynolds Decl. Ex. 7 (Bastounes Dep. at 33:5-34:5).)[3]

Nevertheless, Duggan claims that Bastounes authorized the filing of this action "both in word and deed." (Opp'n at 3.) But whether Bastounes initially authorized the filing of this action is irrelevant to Defendants' Motion because it is *undisputed* that Bastounes now seeks to dismiss this action. Duggan cites nothing that prevents Bastounes from now requesting the lawsuit's voluntary dismissal for the reasons discussed in his Declaration. Duggan has not and cannot cite any authority holding that MGLLC's Manager has no power to voluntarily dismiss

---

[3] Counsel for Plaintiff and Duggan was present at Bastounes's deposition, heard the testimony, but chose not to ask Bastounes a single question. (Reynolds Decl., ¶ 9.) Plaintiff and Duggan now feign surprise that Bastounes would submit a Declaration suggesting he did not authorize the lawsuit (fully consistent with his deposition testimony), and even ask for additional discovery on this subject despite not inquiring of him at his deposition. This request for additional discovery should be denied.

this lawsuit.  To the contrary, the MGLLC Operating Agreement makes clear that *only the Manager* of MGLLC may "retain counsel and institute such suits or proceedings, in the name and on behalf of the Company."  (Bastounes Decl. Ex. A § 4.02(a)(iii).)

Counsel for Plaintiff and Duggan, Matthew Tanner, does not claim in his Declaration that Bastounes retained him to file this lawsuit (noting instead that Bastounes has separate counsel). (Opp'n Ex. A, ¶ 13.)  Tanner has no authority to represent MGLLC's interests because he was not retained by the true Manager of MGLLC.

## V.    **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that this action be dismissed in its entirety with prejudice.

Dated:  June 24, 2014                          Respectfully submitted,

                                               */s/ Hamilton Hill*
                                               Sidney Herman (# 3121807)
                                               Hamilton Hill (# 6275123)
                                               Chris Hagale (# 6306085)
                                               BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
                                               54 West Hubbard Street
                                               Chicago, IL  60654
                                               Telephone: (312) 494-4400
                                               Facsimile:  (312) 494-4440
                                               skip.herman@bartlit-beck.com
                                               hamilton.hill@bartlit-beck.com
                                               chris.hagale@bartlit-beck.com

                                               Michael J. Kump
                                               Jeremiah Reynolds
                                               KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
                                               808 Wilshire Blvd., 3rd Floor
                                               Santa Monica, California 90401
                                               Telephone:  (310) 566-9800
                                               Facsimile:   (310) 566-9850

                                               *Attorneys for Defendants and Counter-Claimants*
                                               *George and Leona Productions, Inc. and Michael*
                                               *Keaton*

## CERTIFICATE OF SERVICE

I, Hamilton Hill, an attorney, hereby certify that a true and correct copy of the foregoing

document entitled Defendants' Reply in Support of Motion for an Order Dismissing Action With

Prejudice was electronically filed with the Clerk of the Court for the Northern District of Illinois

using the CM/ECF System and emailed to counsel for Plaintiff listed below on June 24, 2014.

> Matthew Tanner
> Tanner & Lehman LLC
> 53 W. Jackson Blvd., Suite 400
> Chicago, IL  60604
> Telephone: (312) 588-1970
> mtanner@tannerlehman.com
>
> *Attorney for Plaintiff Merry Gentleman, LLC*
> *and Third-Party Defendant Paul Duggan*

> */s/ Hamilton Hill*
> Hamilton Hill
> BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
> 54 West Hubbard Street
> Chicago, IL  60654
> Telephone: (312) 494-4400
> Facsimile:  (312) 494-4440
> hamilton.hill@bartlit-beck.com
>
> *Attorney for Defendants George and Leona*
> *Productions, Inc. and Michael Keaton*