IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MERRY GENTLEMAN, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 2690 |
| | ) | |
| v. | ) | Judge Feinerman |
| | ) | |
| GEORGE AND LEONA PRODUCTIONS, | ) | |
| INC., AND MICHAEL KEATON, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Michael Keaton puts forth 66 "material" facts and a 15-page brief in an effort to tell the following tale: (1) The producers were neophytes; (2) there were at least *some* aspects of his directorial duties that Keaton did *not* breach, at least according to some sources; (3) the movie that was created was good, and was well-received by many critics; (4) it is all but impossible to predict what will make a movie a commercial success or not; and thus (5) plaintiff is unable to prove that a movie in the but-for universe (one where Keaton did not breach) would have sold, would have sold for some reasonably ascertainable price, or would have performed in some reasonably ascertainable way at the box office.

We can stipulate—for purposes of the present motion—to all of that, and summary judgment still must be denied.

> To prevail on a breach of contract claim, a plaintiff must establish the existence of a valid and enforceable contract, plaintiff's performance, defendant's breach of the terms of the contract, and damages resulting from the breach. *Lindy Lu LLC v. Ill. Cent. R.R. Co.*, --- Ill.App.3d ----, 368 Ill.Dec. 701, 984 N.E.2d 1171, 1175 (2013). Thus, to survive summary judgment, [plaintiff] must have pointed to sufficient evidence supporting each of these elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (nonmoving party must make a sufficient showing on all essential elements of the case on which she has the burden of proof).

*Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724 (7th Cir. 2014).

Here it is worth pausing to consider what Keaton's motion does—and does not—challenge. Keaton's motion does not dispute that the parties had a valid contract for Keaton to perform directorial duties. The motion does not claim that MG LLC failed to perform under that contract. It does not claim that Keaton fulfilled all of his obligations under the contract (asserting instead that there is some evidence that Keaton adequately performed in some respects).[1]

Keaton's motion asserts—in its sole argument—that plaintiff cannot establish that his alleged breaches caused compensable damages. And in reality, Keaton's motion does not even go that far: instead it argues only that *one* of plaintiff's two damage

---

[1] A point of order: Under Local Rule 56.1(a)(3), a moving party has the opportunity to set forth "material facts as to which the moving party contends there is no genuine issue," and those facts, unless properly controverted by the nonmovant, will be deemed admitted, LR 56.1(b)(3)(C). Many of Keaton's "facts" are assertions that a witness said something (*e.g.*, ¶ 14, "Bastounes testified at his deposition . . . that . . . ."). "Witness A testified to X," if not controverted, does not result in an admission that X is true; it is simply an admission that Witness A testified to X. *See Mixing & Mass Transfer Technologies, LLC v. City of Lincoln, Nebraska*, 2013 WL 3947177 at *6 & n.12 (D. Neb. July 31, 2013) (under District of Nebraska local rule substantially identical to N.D. Ill. LR 56.1, on a statement of fact that a witness testified to certain effect, "Plaintiffs are deemed to have admitted that Mr. Sova has so testified, [but] they are not deemed to have admitted the truth of the facts stated by Mr. Sova").

2

theories cannot make the grade (barely mentioning the other). This is hardly the basis for summary judgment.

### Keaton's Breaches Caused Compensable Damages.

There is evidence that Keaton breached the contract in at least the following ways: (a) he failed to prepare his first cut of the film in a timely fashion (Facts 101-105); (b) the first cut that he prepared and submitted to the producers (aside from being substantially tardy) was not in a sufficiently completed state to be ready for viewing by the producers (Facts 106-108); (c) even months later (*i.e.*, months after the tardy first-cut submission), Keaton's revised cut still did not meet basic standards of being ready for the producers to watch (Fact 110); (d) Keaton breached the express terms of the contract by directly communicating with Sundance personnel and interfering with MG LLC's ability to have its version of the movie screened at Sundance, and threatened to boycott Sundance if he did not get his way (Facts 112-116); (e) Keaton and his personal assistants ceased communicating and cooperating with the producers and their staff during the post-production (*i.e.*, post-shooting) process (Fact 117); and (f) Keaton further violated his duties to provide reasonable publicity and promotional services, such as by appearing (at producers' expense) on Good Morning America, and then claiming to be unable to confirm the host's description of the film's plot, and noticeably failing even to watch the clip that was shown (Facts 118-20).[2]

---

[2] We note these significant breaches, and support them in plaintiff's Local Rule 56.1 statement ("Facts" 101 *et seq.*), not because plaintiff has the burden to do so in response to defendants' motion (which, as noted, does not assert that plaintiff lacks evidence of breach), but because they provide context for the damages issue.

Keaton's actions were in breach of his contract, and caused damage to MG LLC in that it was unable to screen and market the film of its choosing (as was its contractual right); in that it endured substantial additional costs; and in that in reliance on its expectation that Keaton would satisfy his contractual obligations, it spent millions of dollars to finance Keaton's temper tantrum, money it never would have expended if it had been aware of Keaton's unwillingness to conform his behavior to his contractual obligations. (Facts 121-122.)

Keaton's brief notes in passing in its "Introduction" section that "Plaintiff hopes to recover either $4 million that it claims the Film should have sold for at the Sundance Film Festival ('Sundance'), or the entire $5.5 million that Plaintiff invested in the Film."

And indeed, as can be seen in plaintiff's Rule 26 disclosures (submitted with Keaton's fact statement as Exhibit M), plaintiff has put forth two damage theories: the first based on plaintiff's reliance interest ("Plaintiff invested approximately $5.5 million in performing its contractual obligations, money it would not have invested had it been aware that defendants [Keaton and his loan-out company] would violate the terms of their contracts"), and an alternative one based on the benefit of the bargain ("In the alternative, plaintiff will seek the benefit of the bargain damages from defendants, in that in the absence of defendants' breaches, the film would have sold at Sundance for approximately $4 million (plus additional distribution upside), or would have had similar commercial success if completed and released in timely fashion and if defendants had met their contractual obligations").

The sole basis for Keaton's motion—really and truly, the only argument that his motion puts forth—is that plaintiff cannot hope to prevail on the second ("alternative") theory of benefit-of-bargain damages. This is because, as Keaton is fond of noting (Keaton Brf. at 1; see also Dkt. 11 at 1 n.1, quoting the excellent ADVENTURES IN THE SCREEN TRADE by Highland Park native William Goldman), "Nobody knows anything" about achieving success in the motion picture industry. Keaton argues that because so many factors—about the movie itself, as well as external trends and conditions—are involved in making a movie a commercial success or failure, it is simply impossible to demonstrate with reasonable certainty that "had X been done" or "had Y not been done," a movie would have met with some measurably different level of commercial success.[3]

But even if Keaton is correct in this argument, it is no basis for summary judgment (maybe an *in limine* motion, but not summary judgment) when the motion—after but a passing mention of the "reliance" theory in its introduction and again at page 7, and then never dealing with it again—provides no basis for concluding that plaintiff cannot prove reliance damages.

### A. Reliance Damages Are Available Under Illinois Law.

"A party injured by another's breach or repudiation of a contract usually seeks recovery in the form of damages based on his 'expectation interest,' which involves

---

[3] In support of his original motion to dismiss in this case (Dkt. 11 n.1), Keaton likewise noted: "The economist Dr. Arthur De Vany studied over 2,000 motion pictures in order to conclude: 'Revenue forecasts have zero precision, which is just another way to say that "anything can happen."' *Hollywood Economics: How Extreme Uncertainty Shapes the Film Industry* (New York: Routledge 2004)."

obtaining the 'benefit of the bargain,' or his 'reliance interest,' which involves reimbursement for loss caused by reliance on a contract." *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC,* 364 Ill. App. 3d 6, 14 (1st Dist. 2006), citing RESTATEMENT (SECOND) OF CONTRACTS §344. *See also Lakeview Collection Inc. v. Bank of Am., N.A.,* 942 F. Supp. 2d 830, 858 (N.D. Ill. 2013) (under Illinois law, as an alternative to expectation damages, "the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance") (quoting RESTATEMENT (SECOND) OF CONTRACTS §349). This approach is specifically endorsed "where the usual method" (benefit-of-bargain damages) "would be too speculative." *Herbert W. Jaeger & Assocs. V. Slovak Am. Charitable Ass'n*, 156 Ill. App. 3d 106, 113 (2d Dist. 1987).[4]

Here, Keaton presents no evidence or argument on this issue. His motion does not challenge—nor could it—that plaintiff incurred millions of dollars in expenses, or that it incurred those expenses in performance of the contract.

**B. Plaintiff Can Establish the Requisite Causation.**

Causation is not an impediment to plaintiff's ability to seek a recovery. Even accepting Keaton's position on the inherent inability of a litigant to demonstrate with reasonable certainty that preparing the film in a different way or in a different time-

---

[4] This rule is well established, and is not unique to Illinois. "[W]here the prospective, 'benefit of the bargain' damages prove too difficult or speculative to calculate, courts commonly give the plaintiff damages measured retrospectively, protecting the plaintiff's 'reliance interest' by 'undoing the harm which his reliance on the defendant's promise has caused him' and 'put[ting] him in as good a position as he was in before the promise was made.'" *See Nashville Lodging Co. v. RTC,* 59 F.3d 236, 245 (D.C. Cir. 1995) (quoting L.L. Fuller & William R. Perdue, *The Reliance Interest in Contract Damages (Part 1)*, 46 Yale L.J. 52, 54 (1936)).

frame would have led to a measurably different result, under a reliance theory the causation prong is satisfied when the plaintiff demonstrates "both that it incurred those expenditures and that it incurred them in preparation for performance or in performance." *Westfed Holdings, Inc. v. United States*, 52 Fed. Cl. 135, 154 (2002) (applying RESTATEMENT (SECOND) OF CONTRACTS §349). *See also Slattery v. United States*, 69 Fed. Cl. 573, 577 (2006) (internal quotation marks omitted) ("In the context of reliance damages, causation refers to Plaintiff's burden showing that its ... expenditures were incurred as a result of the contract"), *aff'd in part, rev'd in part on other grounds,* 583 F.3d 800 (Fed. Cir. 2009), *as modified,* 635 F.3d 1298 (Fed. Cir. 2011).

## CONCLUSION

In short, plaintiff has proof to establish the damage/causation prong that is the sole basis of Keaton's summary judgment motion. That motion must be denied.

Respectfully submitted,

 s/ Matthew D. Tanner

**ROESER BUCHEIT & GRAHAM LLC**
Matthew D. Tanner
Two North Riverside Plaza, Suite 1420
Chicago, Illinois 60606
312.300.2522
mtanner@rbglegal.com

*Counsel for Plaintiff Merry Gentleman, LLC*

7

## CERTIFICATE OF SERVICE

  Matthew D. Tanner, an attorney, hereby certifies that he caused this memorandum, and plaintiff's Response to Defendants' Local Rule 56.1 Statement of Material Facts, upon all counsel of record via the court's electronic docketing system on October 6, 2014.

                <u>s/ Matthew D. Tanner</u>