**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Merry Gentleman, LLC,**<br><br>                Plaintiff,<br><br>   v.<br><br>**George and Leona Productions, Inc., and Michael Keaton,**<br><br>                Defendants. | No. 1:13-cv-02690<br><br>Judge Gary Feinerman |
| **George and Leona Productions, Inc., and Michael Keaton,**<br><br>                Counterclaimants,<br><br>   v.<br><br>**Merry Gentleman, LLC,**<br><br>                Counterdefendant,<br><br>**Paul Duggan,**<br><br>                Third-Party Defendant. | |

**COUNTERCLAIMANTS' OPPOSITION TO
PAUL DUGGAN'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. STATEMENT OF FACTS THAT CREATE GENUINE ISSUES OF
MATERIAL FACT FOR DUGGAN'S MOTION ..........................................................2

    A. The Directing Agreement Dated February 1, 2007. ..............................................2

    B. The Settlement and Release Dated December 14, 2007. .......................................3

    C. MGLLC and its Representatives Contend Settlement and Release is Invalid. ........................................................................................................................3

    D. Discovery Uncovers Duggan's Role in Inducing MGLLC to Breach. ...................4

III. THE INTERFERENCE CLAIM IS NOT TIME-BARRED BECAUSE THE
LIMITATIONS PERIOD DID NOT BEGIN TO RUN UNTIL AFTER THE
FILING OF THIS ACTION .................................................................................................5

IV. DUGGAN SHOULD BE EQUITABLY ESTOPPED FROM ASSERTING THE
BAR OF THE STATUTE OF LIMITATIONS ..................................................................7

    A. The Doctrines of Equitable Estoppel and Equitable Tolling. .................................8

    B. MGLLC and Duggan Concealed Their Contention that the Settlement and
Release is Invalid Until the Filing of this Action. ...................................................8

V. CONCLUSION .....................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................... 2, 7, 10

*Clay v. Kuhl*,
    727 N.E.2d 217 (Ill. 2000) ................................................................................................ 8

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 1188 (1938) ............................................................................................... 5, 7

*Fed. Signal Corp. v. Thorn Automated Sys., Inc.*,
    693 N.E.2d 418 (Ill. App. Ct. 1998) ................................................................................. 6

*Guar. Trust v. York*,
    326 U.S. 99 (1945) ........................................................................................................... 5

*Hollander v. Brown*,
    457 F.3d 688 (7th Cir. 2006) ..................................................................................... 7, 8, 9

*Kim v. Kim*,
    360 F.Supp.2d 897 (N.D. Ill. 2005) .............................................................................. 5, 6

*Parks v. Kownacki*,
    737 N.E.2d 287 (Ill. 2000) ............................................................................................... 8

**STATUTES**

735 ILCS 5/13-205 (West 2014) ............................................................................................ 5

**RULES**

Local Rule 56.1 ....................................................................................................................... 2

I.      **INTRODUCTION**

Counterclaimants Michael Keaton and George and Leona Productions, Inc. (collectively, "Keaton") have sued Third-Party Defendant Paul Duggan ("Duggan") for intentional interference with the Directing Agreement between Keaton and Merry Gentleman, LLC ("MGLLC") for the film *The Merry Gentleman* (the "Film"). Duggan moves for summary judgment on the ground that the interference claim is barred by the five-year statute of limitations. Duggan's motion must be denied on the following independent grounds. *First*, the "discovery rule" determines when the statute of limitations began to run. Duggan presents *no evidence* that Keaton or his representatives knew or should have known, at any time more than five years before the filing of the interference claim, that Duggan intentionally induced MGLLC to breach the Directing Agreement with Keaton. To the contrary, the evidence shows otherwise.

*Second*, even if the statute of limitations began to run in 2007, the doctrines of equitable estoppel and/or equitable tolling preclude Duggan from asserting the statute of limitations as a defense. The parties entered into a Settlement and Release Agreement in December 2007 (the "Settlement and Release"), which barred Keaton from asserting any claims against MGLLC and Duggan. From that date until the filing of this action in April 2013, MGLLC and Duggan concealed their contention that the Settlement and Release is invalid. But after they repudiated the Settlement and Release in this action, Keaton conducted discovery and filed the claims against MGLLC and Duggan. Equity and fair dealing require that Duggan be estopped from asserting the statute of limitations for the period during which he and MGLLC concealed their true position regarding the Settlement and Release.

Thus, Duggan's motion must be denied because, at a minimum, there is sufficient evidence to create genuine issues of material fact with regard to the issues raised by the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

II. **STATEMENT OF FACTS THAT CREATE GENUINE ISSUES OF MATERIAL FACT FOR DUGGAN'S MOTION**

    A. **The Directing Agreement Dated February 1, 2007.**

MGLLC and Keaton entered into the Directing Agreement, dated February 1, 2007, for Keaton's services as director of the Film.[1] (MF 1.) The Directing Agreement provides, among other things, that: (a) Keaton "shall be accorded all of the cutting rights specified in the DGA Low Budget Basic Agreement (i.e., one cut and one recruited audience screening)" (MF 2); (b) Keaton shall be entitled to an additional cut and an additional recruited audience screening if certain conditions are met (MF 3); and (c) Keaton "shall have the first opportunity to make additional cuts to the Picture" requested by MGLLC (MF 4).

The only cutting right granted to MGLLC by the Directing Agreement is the "final cut on the Picture." (MF 6.) Section 7-504 of The DGA Basic Agreement (2008) and its predecessor, incorporated by reference into the Directing Agreement, provides that "[n]o one shall be allowed to interfere with the Director of the film during the period of the Director's Cut [and] [t]here shall be no 'cutting behind' the Director as that term is commonly understood in the motion picture industry." (MF 5.)

---

[1] Keaton's Response to Duggan's Statement of Material Facts pursuant to Local Rule 56.1(b)(3)(B), which includes Keaton's Statement of Additional Material Facts pursuant to Local Rule 56.1(b)(3)(C), is filed concurrently herewith. Citations to paragraph numbers of Keaton's Statement of Additional Material Facts are cited herein as "MF #".

2

  **B.** <u>**The Settlement and Release Dated December 14, 2007.**</u>

  The Film was photographed, with Keaton directing, in Chicago during March and April 2007. (MF 7.) During post-production, which started in May 2007, certain disputes arose between MGLLC and Keaton. Keaton submitted a first cut of the Film to MGLLC in early August 2007. (MF 8.) Prior thereto, however, MGLLC made preparations for and made its own cut of the Film without Keaton's knowledge or authorization. (MF 10-18.) Furthermore, MGLLC never held a recruited audience screening of the Film as required by the Directing Agreement. (MF 9.) On October 10, 2007, Keaton's attorney sent a letter to MGLLC's attorney stating that MGLLC had breached the Directing Agreement with respect to Keaton's cutting and screening rights. (Duggan Statement of Material Facts ¶ 4 and Ex. A thereto, D.I. 68.)

  In order to resolve all disputes and move forward with the Film, the parties agreed to release all claims against each other. In order to do so, Keaton and MGLLC entered into the Settlement and Release. (MF 19.) The Settlement and Release provides that Keaton release MGLLC and its representatives and affiliates from any and all claims arising out of or relating to (a) any contracts concerning *The Merry Gentleman* or (b) the provision or performance of directing and acting services by Keaton with respect to *The Merry Gentleman*, up to the date of the Settlement and Release. (MF 20.) The Settlement and Release also provides that Keaton will not institute any actions against MGLLC or its representatives or affiliates arising from or related in any way to the claims that have been released. (MF 21.)

  **C.** <u>**MGLLC and its Representatives Contend Settlement and Release is Invalid.**</u>

  On April 10, 2013, MGLLC filed its Complaint in this action, contending for the first time that the Settlement and Release is invalid. (MF 24.) At no time prior to the filing of this

3

action did MGLLC or any of its representatives disclose to Keaton or to any of his representatives that they believe or contend that the Settlement and Release is invalid. (MF 25.)

### D. Discovery Uncovers Duggan's Role in Inducing MGLLC to Breach.

On September 18, 2013, Keaton filed a third-party claim against Duggan, which was amended on December 6, 2013. (MF 26.) Keaton alleges that MGLLC breached the Directing Agreement by, among other things, "cutting behind" Keaton and not providing him with a recruited audience screening. (MF 27.) Keaton further alleges that Duggan intentionally interfered with the Directing Agreement by inducing and/or causing MGLLC to breach the Agreement. (MF 28.)

Keaton learned for the first time during this action that Duggan played a role in causing MGLLC to breach the Directing Agreement. (MF 10-18, 27-30.) Ron Lazzeretti ("Lazzeretti"), screenwriter of the Film and one of its producers (along with Duggan and Tom Bastounes), was involved in preparing MGLLC's "Chicago cut" of the Film. (MF 11.) Duggan asked Lazzeretti to do so. (MF 18.) Documents produced in discovery include emails to Lazzeretti from Sharon Zurek ("Zurek"), MGLLC's post-production supervisor, in June 2007—months before Keaton delivered his first cut of the Film—concerning preparations necessary for MGLLC to prepare its own cut of the Film. (MF 12-15.) In late July 2007—also before Keaton delivered his first cut—Zurek emailed Lazzeretti and the producers regarding corrections she made to "problematic scenes" in the Film. (MF 16-17.) This evidence uncovered in discovery shows that Duggan induced MGLLC to breach the Directing Agreement by violating Keaton's cutting and screening rights.

III. **THE INTERFERENCE CLAIM IS NOT TIME-BARRED BECAUSE THE LIMITATIONS PERIOD DID NOT BEGIN TO RUN UNTIL AFTER THE FILING OF THIS ACTION**

A claim for intentional interference with contract consists of the following elements under Illinois law: "(1) the existence of a valid and enforceable contract between plaintiff(s) and another; (2) defendants' awareness of the contractual relation; (3) defendants' intentional and unjustified inducement of a breach [of] the contract; (4) a subsequent breach by the other, caused by defendants' wrongful conduct; and (5) damages." *Kim v. Kim*, 360 F.Supp.2d 897, 903 (N.D. Ill. 2005) (citation omitted).

The statute of limitations under Illinois law on a claim for intentional interference with contract is five years. 735 ILCS 5/13-205 (West 2014).[2] Duggan contends that the interference claim against him is time-barred because "'the limitations period generally begins to run on the date of breach,'" and MGLLC allegedly breached the Directing Agreement in 2007, *i.e.*, more than five years before Keaton sued Duggan. (Duggan Mot. ¶¶ 3-6, D.I. 67.) Duggan further argues that even if "notice of the alleged breach was deemed relevant," the October 2007 letter from Keaton's counsel to MGLLC's counsel indicates that Keaton was "well aware of the actions of which they now complain well over five years before this claim was filed." (*Id.*, ¶ 6.)

Duggan's argument fails because he erroneously equates a claim for breach of contract with a tort claim for intentional interference with contract. While an interference claim requires a breach of the underlying contract, the breach *alone* does not establish all the elements necessary for the interference claim. *Kim*, 360 F.Supp.2d at 903. In addition to establishing the breach of the underlying contract, plaintiff must also demonstrate that "defendants' intentional

---

[2] Under the familiar rule of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), the Court in this diversity action applies Illinois substantive law to resolve issues regarding statute of limitations. *See Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945) (holding that statute of limitations are considered substantive matters for purposes of the *Erie* doctrine).

5

and unjustified inducement of a breach [of] the contract" caused the breach of the underlying contract. *Id*. Thus, simply knowing that a party to a contract has breached does not mean that some third party induced the breach. Duggan's failure to honor this distinction between the two claims undermines his motion.

Contrary to Duggan's argument, the five-year limitations period on an interference claim does not begin to run on the date the underlying contract is breached, or even on the date plaintiff becomes aware of the breach. Rather, the limitations period begins to run when plaintiff knows of the breach *and knows that defendant tortiously induced the breach*. It is settled under Illinois law that "[t]he discovery rule applies to contractual torts just as it applies to other torts. Therefore the limitations period for the tort alleged here [*i.e.*, intentional interference with contract] did not begin until plaintiff knew, or reasonably should have known, of the breach of contract *and its tortious inducement*." *Fed. Signal Corp. v. Thorn Automated Sys., Inc.*, 693 N.E.2d 418, 421 (Ill. App. Ct. 1998) (emphasis added and citations omitted).

The *only* evidence cited by Duggan to support his motion is the letter from Keaton's counsel to MGLLC's counsel dated October 10, 2007, which addresses MGLLC's *breach* of the Directing Agreement. (Duggan Statement of Material Facts ¶ 4.) Nowhere does that letter state, or even suggest, that Keaton and/or his representatives also knew that Duggan had *tortiously induced* MGLLC to breach the Directing Agreement. Duggan presents *no evidence* that Keaton and/or his representatives knew in October 2007, or at any time more than five years before the filing of the third-party claim on September 18, 2013, that Duggan intentionally induced MGLLC to breach the Directing Agreement. The record is clear that Keaton did not know about the role played by Duggan in causing MGLLC to breach the Directing Agreement until after this action was filed. (MF 10-18, 30.)

6

Even if there was evidence that Keaton acquired such knowledge in 2007, Keaton was barred from asserting any claims against Duggan as a result of the Settlement and Release. It was only after MGLLC filed this action in April 2013 and for the first time repudiated the Settlement and Release that Keaton could assert claims against Duggan and conduct discovery without fear of breaching the Settlement and Release. As a result, the fact that Duggan played a role in causing MGLLC to breach the Directing Agreement could not be discovered until after MGLLC repudiated the Settlement and Release and Keaton had an opportunity to conduct discovery in this action. (MF 10-18, 30.)

The five-year statute of limitations on the claim against Duggan for intentional interference with contract did not begin to run until Keaton knew, or reasonably should have known, that *Duggan tortiously induced the breach of the Directing Agreement.* Because Keaton discovered such facts less than five years before filing the third-party claim against Duggan, that claim is not time-barred. At a minimum, there is sufficient evidence to create a genuine issue of material fact regarding this matter. *Anderson*, 477 U.S. at 248-49.

IV.  **DUGGAN SHOULD BE EQUITABLY ESTOPPED FROM ASSERTING THE BAR OF THE STATUTE OF LIMITATIONS**

In addition to the foregoing, there is another separate reason why Duggan's motion for summary judgment should be denied. As shown below, the undisputed facts establish that Duggan's motion must be denied based upon the doctrines of equitable estoppel and/or equitable tolling under Illinois law.[3]

---

[3] "Like the statute of limitations itself, rules that are an 'integral part of the statute of limitations,' such as tolling and equitable estoppel, are treated as substantive for purposes of the *Erie* doctrine." *Hollander*, 457 F.3d at 694 (citations omitted).

7

### A.     The Doctrines of Equitable Estoppel and Equitable Tolling.

Under Illinois law, the doctrine of equitable estoppel suspends the running of the statute of limitations during any period "where the defendant has 'lulled' the plaintiff into delaying suit, either by promising not to plead a limitations defense or by concealing evidence that the plaintiff needed to determine the existence of her claim." *Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006) (citations omitted); *see also Parks v. Kownacki*, 737 N.E.2d 287, 296 (Ill. 2000) (equitable estoppel is available where defendant has used concealment or misrepresentations to prevent plaintiff from suing). "'The test is whether, considering all the circumstances of the case, conscience and honest dealing require that the defendant be estopped.'" *Hollander*, 457 F.3d at 694 (citation omitted).

"The Illinois cases appear, at times, to use 'equitable estoppel' interchangeably with the related principle of equitable tolling." *Id.* at 694 n.3 (citations omitted). The Illinois Supreme Court "defines equitable tolling as a rule that, like equitable estoppel, works to suspend the limitations period when 'the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way.'" *Id*. (quoting *Clay v. Kuhl*, 727 N.E.2d 217, 221 (Ill. 2000)).

### B.     MGLLC and Duggan Concealed Their Contention that the Settlement and Release is Invalid Until the Filing of this Action.

Keaton and MGLLC had disputes during post-production on the Film regarding, among other things, Keaton's cutting and screening rights. To put those disputes behind them, Keaton and MGLLC entered into the Settlement and Release dated December 14, 2007. (MF 19.) As a result, Keaton released all claims against MGLLC and its representatives, including Duggan, for violating the cutting and screening rights granted to Keaton by the Directing Agreement.

8

(MF 20, 22.) Moreover, as a result of the Settlement and Release, Keaton was prohibited from asserting any claims against MGLLC and its representatives. (MF 21, 23.)

On April 10, 2013—more than five years after the parties entered into the Settlement and Release—MGLLC filed its Complaint in this action asserting *for the first time* that the Settlement and Release is invalid. (MF 24.) Until that time, Keaton had reasonably relied upon the existence of the Settlement and Release as precluding him from asserting any claims against MGLLC and its representatives. (MF 29.) After execution of the Settlement and Release in December 2007, it would have been futile, as well as a breach thereof, for Keaton to assert any claims against MGLLC or Duggan in connection with the Film. (MF 20-23.) That bar was lifted, however, when MGLLC filed this action alleging for the first time that the Settlement and Release is invalid. Although Keaton still contends the Settlement and Release is valid and should be enforced, and does not intend to waive that contention, he filed the counterclaim and third-party claim against MGLLC and Duggan out of an abundance of caution because there has been no final adjudication on the enforceability of the Settlement and Release.

Under the doctrines of equitable estoppel and/or equitable tolling, Duggan should be estopped from asserting the statute of limitations as a defense for the period from December 2007 to April 2013, during which (a) he and MGLLC concealed their true intentions regarding the validity of the Settlement and Release, and (b) Keaton was barred from asserting any claims against Duggan. The doctrines of equitable estoppel and/or equitable tolling apply here because Duggan and MGLLC lulled Keaton into delaying suit by concealing their contention that the Settlement and Release is invalid. *Hollander*, 457 F.3d at 694.

9

## V. CONCLUSION

For all the foregoing reasons, Defendants/Counterclaimants Michael Keaton and George and Leona Productions, Inc. respectfully request that Third-Party Defendant Paul Duggan's Motion for Summary Judgment be denied in its entirety. At a minimum, there is sufficient evidence to create a genuine issue of material fact regarding these matters raised by Duggan's motion. *Anderson*, 477 U.S. at 248-49.

Dated: October 6, 2014　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ Christopher Hagale*
　　　　　　　　　　　　　　　　　　　　　　Sidney Herman (# 3121807)
　　　　　　　　　　　　　　　　　　　　　　Hamilton Hill (# 6275123)
　　　　　　　　　　　　　　　　　　　　　　Christopher Hagale (# 6306085)
　　　　　　　　　　　　　　　　　　　　　　BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
　　　　　　　　　　　　　　　　　　　　　　54 West Hubbard Street
　　　　　　　　　　　　　　　　　　　　　　Chicago, IL 60654
　　　　　　　　　　　　　　　　　　　　　　Telephone: (312) 494-4400

　　　　　　　　　　　　　　　　　　　　　　Michael J. Kump
　　　　　　　　　　　　　　　　　　　　　　Jeremiah Reynolds
　　　　　　　　　　　　　　　　　　　　　　KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
　　　　　　　　　　　　　　　　　　　　　　808 Wilshire Blvd., 3rd Floor
　　　　　　　　　　　　　　　　　　　　　　Santa Monica, CA 90401
　　　　　　　　　　　　　　　　　　　　　　Telephone: (310) 566-9800

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants and Counterclaimants George and Leona Productions, Inc. and Michael Keaton*

## CERTIFICATE OF SERVICE

I, Christopher Hagale, an attorney, hereby certify that a true and correct copy of the foregoing document entitled **COUNTERCLAIMANTS' OPPOSITION TO PAUL DUGGAN'S MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of the Court for the Northern District of Illinois using the CM/ECF System and emailed to counsel for Plaintiff listed below on October 6, 2014.

>   Matthew D. Tanner
>   Roeser Bucheit & Graham LLC
>   Two N. Riverside Plaza, Suite 1420
>   Chicago, IL  60606
>   Telephone: (312) 300-2522
>   mtanner@rbglegal.com
>
>   *Attorney for Plaintiff and Counterdefendant*
>   *Merry Gentleman, LLC and Third-Party*
>   *Defendant Paul Duggan*

>   */s/ Christopher Hagale*
>   Christopher Hagale (#6306085)
>   BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
>   54 West Hubbard Street
>   Chicago, IL  60654
>   Telephone: (312) 494-4400
>   Facsimile:  (312) 494-4440
>   chris.hagale@bartlit-beck.com
>
>   *Attorney for Defendants and Counterclaimants*
>   *George and Leona Productions, Inc. and Michael*
>   *Keaton*