**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Merry Gentleman, LLC,**<br><br>                    Plaintiff,<br><br>    v.<br><br>**George and Leona Productions, Inc., and Michael Keaton,**<br><br>                    Defendants.<br><br>**George and Leona Productions, Inc., and Michael Keaton,**<br><br>                    Counterclaimants,<br><br>    v.<br><br>**Merry Gentleman, LLC,**<br><br>                    Counterdefendant,<br><br>**Paul Duggan,**<br><br>                    Third-Party Defendant. | No. 1:13-cv-02690<br><br>Judge Gary Feinerman |

**COUNTERCLAIMANTS' RESPONSE TO
PAUL DUGGAN'S STATEMENT OF MATERIAL FACTS**

Defendants/Counterclaimants Michael Keaton and George and Leona Productions, Inc., pursuant to Northern District of Illinois Rule 56.1(b)(3)(B), submit the following Response to Paul Duggan's Statement of Material Facts, followed by their Statement of Additional Material Facts, pursuant to Northern District of Illinois Rule 56.1(b)(3)(C).

## DESCRIPTION OF THE PARTIES

1. Third-party defendant Paul Duggan is a citizen of the State of Illinois. Third-party plaintiff George and Leona Productions, Inc. is a corporation organized under the laws of the State of California, with its principal place of business in California. Third-party plaintiff Michael Keaton is a citizen of the State of Montana. (Amended Counterclaim, Dkt. 46, ¶¶ 3, 4, 6.)

**RESPONSE**: Uncontroverted.

2. Jurisdiction of plaintiff's claims in this court are premised on diversity jurisdiction, and jurisdiction of the third-party claim that is the basis of this motion is premised on both supplemental jurisdiction, 28 U.S.C. § 1367(a), and diversity jurisdiction, 28 U.S.C. § 1332. (Am. Counterclaim, Dkt. 46 ¶ 1.)

**RESPONSE**: Uncontroverted.

3. Venue is proper in this court in that a substantial portion of the events or omissions complained of, in the underlying complaint and in the third-party claim, took place within this judicial district. (Am. Counterclaim, Dkt. 46 ¶ 2.)

**RESPONSE**: Uncontroverted.

## UNDISPUTED FACT

4. On or about October 10, 2007, attorney-at-law Wendy Kirk, with the law firm of Ziffren, Brittenham, Branca, Fischer, Gilbert-Lurie, Stiffelman, Cook, Johnson, Lande & Wolf LLP, authored the letter Bates-stamped ZB0012-13 (and produced by the Ziffren firm pursuant to subpoena in this action), which has been marked as Exhibit 86 (attached hereto). Keaton Dep. at 182-84.

**RESPONSE**: Uncontroverted.

1

## COUNTERCLAIMANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS

Defendants/Counterclaimants Michael Keaton and George and Leona Productions, Inc., pursuant to Northern District of Illinois Rule 56.1(b)(3)(C), submit the following additional facts which they contend require the denial of Third-Party Defendant Paul Duggan's Motion for Summary Judgment:

1. Michael Keaton and George and Leona Productions, Inc. (collectively, "Keaton"), on the one hand, and Merry Gentleman, LLC ("MGLLC"), on the other hand, entered into a directing agreement, dated February 1, 2007, for Keaton's services as director of *The Merry Gentleman* (the "Directing Agreement"). (Ex. 1, Directing Agreement; Declaration of Christopher R. Hagale in Support of Counterclaimants' Opposition to Paul Duggan's Motion for Summary Judgment ("Hagale Decl.") ¶ 2.)[1]

2. Paragraph 4.2 of the Directing Agreement provides, among other things, that Keaton "shall be accorded all of the cutting rights specified in the DGA Low Budget Basic Agreement (i.e., one cut and one recruited audience screening)." (Ex. 1, Directing Agreement ¶ 4.2.)

3. Paragraph 4.2 of the Directing Agreement provides, among other things, that Keaton:

> shall be entitled to an additional cut and one additional recruited audience screening ("Screening") if and only if the following conditions are met: i) if such additional cut and Screening falls within the final approved budget and Artist has completed the Picture at a final negative cost not exceeding one hundred ten percent (110%) of Company final approved budget (excluding costs due to force majeure, new or changed scenes done at the request of Company, breaches by third parties not caused by Artist,

---

[1] Counterclaimants' Exhibits 1 – 9 are attached to the Declaration of Christopher R. Hagale in Support of Counterclaimants' Opposition to Paul Duggan's Motion for Summary Judgment, filed concurrently herewith.

      any disability of a cast member not caused by Artist, extra costs that have been reimbursed by insurance, increased costs for union personnel under collective bargaining agreements or costs arising from labor disputes which were not reasonably foreseeable when the budget was finalized and increased costs due to currency fluctuations); ii) if the Picture is on schedule (excluding delays caused due to force majeure, new or changed scenes done at the request of Company, breach by or disability of third parties not caused by Artist); iii) the additional cut and additional Screening does not interfere with the release requirements and schedules and the blind bidding policies and practices of Company and its distributors; and iv) provided the additional cut and Screening complies with legal considerations.

(*Id.*)

    4.     Paragraph 4.4 of the Directing Agreement provides, among other things, that if Keaton is ready, willing, and able to do so, when and where reasonably required by MGLLC, and provided such services are completed within a period of time reasonably required by MGLLC, then Keaton shall have first opportunity to make additional cuts to the Film. (*Id.*, ¶ 4.4.)

    5.     Section 7-504 of The DGA Basic Agreement (2008) and its predecessor, incorporated by reference into the Directing Agreement, provides that "[n]o one shall be allowed to interfere with the Director of the film during the period of the Director's Cut [and] [t]here shall be no 'cutting behind' the Director as that term is commonly understood in the motion picture industry." (Ex. 2, Section 7-504 of The DGA Basic Agreement; Hagale Decl. ¶ 3.)

    6.     The only cutting right granted to MGLLC by the Directing Agreement is the "final cut on the Picture." (Ex. 1, Directing Agreement ¶ 4.2.)

    7.     The Film was photographed, with Keaton directing, in Chicago during March and April 2007. (Compl. ¶ 15, D.I. 1; Am. Answer & Countercls. ¶ 15, D.I. 46.)

3

8. Keaton submitted his first cut of the Film to MGLLC in early August 2007. (Compl. ¶ 24; Am. Answer & Countercls. ¶ 24.)

9. MGLLC did not provide Keaton with a recruited audience screening. (Ex. 3, Zurek Dep. 127:12-14; Hagale Decl. ¶ 4.)

10. MGLLC prepared its own cut of the Film, called the "Chicago cut." (MGLLC Statement of Material Facts ¶ 9, D.I. 70.)

11. Ron Lazzeretti ("Lazzeretti") was the screenwriter and producer who oversaw the Chicago cut on behalf of MGLLC, and Sharon Zurek ("Zurek") was MGLLC's post-production supervisor who was involved in overseeing Keaton's cut and the Chicago cut. (Ex. 4, Lazzeretti Dep. 112:25-113:5; Hagale Decl. ¶ 5; Declaration of Sharon Zurek ¶¶ 2-3, 5, 8-10, D.I. 70-1.)

12. On June 11, 2007, Zurek sent an email to Lazzeretti about preparations necessary for MGLLC to prepare its own separate cut of the movie:

> Hi Ron, Hopefully I will be able to get you the set of DVD dailies pronto. Also if you need – we have best take assemblies for all 5 weeks. I can make you a copy if you like.

Lazzeretti responded, "I look forward to getting that set of dailies, and I would also appreciate that copy of the assembly." (Ex. 5, Lazzeretti Dep. Ex. 50; Hagale Decl. ¶ 6.)

13. At his deposition on November 20, 2013, Lazzeretti explained that the "DVD dailies" referred to in his June 11, 2007 email consisted of all the footage shot for the movie. (Ex. 4, Lazzeretti Dep. 83:19-84:15.)

14. On June 12, 2007, Zurek sent an email to Lazzeretti stating:

> I will probably have the goods for you by tomorrow evening.
> I might want to make a copy of the DVDs so we have another set
> handy so If you don't mind getting them until end of day Thursday
> that could work.
>
> What hood do you live in? I also have a copy of the rough
> assembly. A brisk 1:54:45 :)

4

> Well it has everything AND the kitchen sink in it, but I think you will get a good idea of the coverage available.

(Ex. 6, Lazzeretti Dep. Ex. 52; Hagale Decl. ¶ 7.)

15. At his deposition, Lazzeretti testified he could not recall the details about these emails, but explained that "it would appear by looking at all these things that they're trying to prepare me to become involved in some way" and "from what I can gather, it was to familiarize myself with everything." (Ex. 4, Lazzeretti Dep. 92:6-20.)

16. On July 11, 2007, Keaton sent MGLLC's representatives a rough cut of the work-in-progress, but he reminded them that "[t]his is very very early in the process/progress. Please remember this has nothing to do with my first cut in any way." (Ex. 7, Lazzeretti Dep. Ex. 53; Hagale Decl. ¶ 8.)

17. On July 25, 2007, Zurek sent an email to Lazzeretti marked "Confidential," which stated in part:

> Confidential –
>
> Hello Ron,
>
> I've been visiting some of our problematic scenes – interrogation – yikes!!! Goldman and Merch have VERY LITTLE coverage on camera. :( That is why they were staying on Kate. I solved some of it – will look with fresh eyes and ears tomorrow – in any case – the information in the scene is playing MUCH BETTER now and we know there are three people having a conversation.
>
> Christmas tree scene – I am cracking myself up with this one – I think I found a great fix to the Frank entering problem --- I think you will enjoy it – hope so anyway.
>
> I'm going to keep tackling some of the scenes that I know they had problems with and see how that goes – I'm hoping to have another pass for you to look at after the weekend – or maybe even Sunday night if you want to come by and watch something. (Tom – you will most likely want to wait – but you are always welcome to be in the room whenever you want.)

5

> I figure I will go through and do another pass based on what I have seen and heard from the LA edit room and from all of our conversations.

Later that same day, Lazzeretti responded by email to Zurek: "Sharon, Just hearing from you like this has already got me excited about our prospects. Have at it, my dear. I look forward to checking it out." (Ex. 8, Lazzeretti Dep. Ex. 55; Hagale Decl. ¶ 9.)

18. Lazzeretti testified that by July 25, 2007, producers Paul Duggan and Tom Bastounes had asked him to do an edit of the film without Keaton's involvement:

> Q: Do you recall having discussions with anyone about problematic scenes at this point?
>
> A: I believe it's around this point that the notion of what Merry Gentleman – how Merry Gentleman wanted to proceed at that point was brought to me as more of a would I consider. They were asking me to do an edit if they decided that they weren't going to move forward with Michael to continue editing.
>
> Q: Who first approached you with the notion of you potentially doing an edit?
>
> A: It would have been Paul [Duggan] or Tom [Bastounes], or both.
>
> Q: And you believe they approached you around the time of this [July 25, 2007] e-mail?
>
> A: Yes. Because originally what they had asked was would I consider working with Sharon on a cut of the film if they wanted me to. And because Sharon was already under their employ.

(Ex. 4, Lazzeretti Dep. 101:16-102:11.)

19. Keaton and MGLLC entered into the Confidential Settlement Agreement and Release dated December 14, 2007 (the "Settlement and Release"). (Ex. 9, Settlement and Release; Hagale Decl. ¶ 10; *see also* Compl. ¶ 42 and Ex. D thereto (copy of Settlement and Release); Am. Answer & Countercls. ¶ 42.)

6

20. The Settlement and Release provides that Keaton release MGLLC and its directors, officers, stockholders, affiliated and related entities, parent corporations, subsidiary corporations, successors, and assigns from any and all claims arising out of or relating to (a) any contracts concerning *The Merry Gentleman* or (b) the provision or performance of directing and acting services by Keaton with respect to *The Merry Gentleman*, up to the date of the Settlement and Release. (Ex. 9, Settlement and Release ¶ 1(b).)

21. The Settlement and Release also provides that Keaton will not institute any actions against MGLLC or its directors, officers, stockholders, affiliated and related entities, parent corporations, subsidiary corporations, successors, and assigns arising from or related in any way to the claims that have been released. (*Id.*, ¶ 2(b).)

22. As a result of the Settlement and Release, Keaton released all claims against MGLLC and its representatives for, *inter alia*, violating the rights granted to Keaton by the Directing Agreement in connection with *The Merry Gentleman*, including any claims for breach of contract or intentional interference with contract. (*Id.*, ¶ 1(b).)

23. As a result of the Settlement and Release, Keaton was prohibited from asserting any claims against MGLLC or its representatives. (*Id.*, ¶ 2(b).)

24. On April 10, 2013, MGLLC filed its Complaint in this action, alleging that "[t]he Settlement and Release is invalid as lacking in consideration, and as being the product of duress." (Compl. ¶ 45.)

25. At no time prior to the filing of this action did MGLLC or any of its representatives disclose to Keaton or any of his representatives that they believe or contend that the Settlement and Release is invalid. (Declaration of Michael Keaton in Support of Counterclaimants' Opposition to Third-Party Defendant Paul Duggan's Motion for Summary

Judgment ("Keaton Decl.") ¶¶ 2-4, filed concurrently herewith; Declaration of Wendy Kirk in Support of Counterclaimants' Opposition to Third-Party Defendant Paul Duggan's Motion for Summary Judgment ¶¶ 2-3, filed concurrently herewith.)

26. On September 18, 2013, Keaton filed a counterclaim against MGLLC and a third-party claim against Duggan, which was amended on December 6, 2013. (Answer, D.I. 24; Am. Answer & Countercls., D.I. 46.)

27. Keaton alleges in the counterclaim against MGLLC that MGLLC breached the Directing Agreement by, among other things, "cutting behind" Keaton and not providing him with a recruited audience screening. (Am. Answer & Countercls. ¶¶ 14-17.)

28. Keaton alleges in the third-party claim against Duggan that Duggan intentionally interfered with the Directing Agreement by inducing and/or causing MGLLC to breach the Agreement. (*Id.*, ¶¶ 18-20, 25-29.)

29. After execution of the Settlement and Release in December 2007, it was Keaton's understanding that he had released all claims against MGLLC and its representatives relating to *The Merry Gentleman*, and that he was prohibited from filing any claims against them. (Keaton Decl. ¶ 3.)

30. Keaton did not know until after the filing of this action that Duggan induced MGLLC to breach the Directing Agreement. (*Id.*, ¶ 5.)


Dated: October 6, 2014

Respectfully submitted,

*/s/ Christopher Hagale*
Sidney Herman (# 3121807)
Hamilton Hill (# 6275123)
Christopher Hagale (# 6306085)
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street
Chicago, IL 60654
Telephone: (312) 494-4400

Michael J. Kump
Jeremiah Reynolds
KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 Wilshire Blvd., 3rd Floor
Santa Monica, CA 90401
Telephone: (310) 566-9800

*Attorneys for Defendants and Counterclaimants George and Leona Productions, Inc. and Michael Keaton*

**CERTIFICATE OF SERVICE**

I, Christopher Hagale, an attorney, hereby certify that a true and correct copy of the foregoing document entitled **COUNTERCLAIMANTS' RESPONSE TO PAUL DUGGAN'S STATEMENT OF MATERIAL FACTS** was electronically filed with the Clerk of the Court for the Northern District of Illinois using the CM/ECF System and emailed to counsel for Plaintiff listed below on October 6, 2014.

Matthew D. Tanner
Roeser Bucheit & Graham LLC
Two N. Riverside Plaza, Suite 1420
Chicago, IL  60606
Telephone: (312) 300-2522
mtanner@rbglegal.com

*Attorney for Plaintiff and Counterdefendant*
*Merry Gentleman, LLC and Third-Party*
*Defendant Paul Duggan*

*/s/ Christopher Hagale*
Christopher Hagale (#6306085)
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street
Chicago, IL  60654
Telephone: (312) 494-4400
Facsimile:  (312) 494-4440
chris.hagale@bartlit-beck.com

*Attorney for Defendants and Counterclaimants*
*George and Leona Productions, Inc. and Michael*
*Keaton*